UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JAMES W. RHODA, JR.,

                                        Plaintiff,

            -against-                                           COMPLAINT

CENTRAL HUDSON GAS & ELECTRIC CORP.,
SHARON MCGINNIS, JILL SAMMON,
ERICA TYLER, TERA STONER, JOHN DOES 1-10,
AND JANE DOES 1-10                                        22-CIV-_____-_____

                                                          JURY TRIAL DEMANDED

                                        Defendants.

-----------------------------------------------------------------x

        Plaintiff James W. Rhoda, Jr. (hereinafter "Plaintiff") brings this complaint against

Central Hudson Gas & Electric Corp. ("CHGE"), Sharon McGinnis ("McGinnis"), Jill Sammon

("Sammon"), Erica Tyler ("Tyler"), Tera Stoner ("Stoner"), John and Jane Does 1-10, ("Does"

that Plaintiff will name and identify once they are disclosed), hereinafter collectively

"Defendants", as follows[1]:

## INTRODUCTION

1.  This is an action for monetary, declaratory, and injunctive relief against the Defendants,

    based on their discriminatory conduct against Plaintiff, a person with disabilities protected by

    federal and state disability rights statutes.

2.  Plaintiff was discharged from his position as a Senior Telecommunications Systems Designer

    with Defendant CHGE subsequent and due to: (1) the Defendants becoming aware of

---

[1] This document was prepared with the assistance of an attorney admitted to practice before this Court.

Plaintiff's disabilities that substantially limit one or more of his major life activities, and (2) Plaintiff's requests for reasonable accommodations for his disabilities.

3. Defendants have discriminated against Plaintiff by engaging in adverse employment activity, including utilizing standards and criteria on Plaintiff that have the effect of discrimination on the basis of disability, discriminatory rates of pay and compensation provided to Plaintiff, failing to reasonably accommodate Plaintiff with a lateral move, transfer, or downgrade, and ultimately terminating Plaintiff in violation of the Americans with Disabilities Act, as amended (hereinafter "ADA"), 42 U.S.C. §12101, et seq.

4. Defendants have discriminated against Plaintiff in violation of the Rehabilitation Act of 1973, 29 U.S.C. §701, et seq., which prohibits discrimination against persons with disabilities in programs and activities receiving Federal financial assistance.

5. Defendants have discriminated against Plaintiff in violation of the New York State Human Rights Law (hereinafter "NYSHRL"), NY Exec. L §290, et seq.

6. Defendants have violated the laws of the State of New York and the Civil Practice Law and Rules ("CPLR") Article 2.

7. Defendants have further violated Plaintiff's rights under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (hereinafter "VEVRAA"), 38 U.S.C. Section 4212, and a complaint was filed with the US Department of Labor's Office of Federal Contract Compliance Programs (hereinafter "OFCCP") on August 25, 2021. That complaint is still being investigated as of the commencement of the instant action.

**JURISDICTION**

8. These claims arise under the ADA, and this Court has subject matter jurisdiction based on a federal question under 28 U.S.C. §§1331 and 1343.

2

9.  This Court also has jurisdiction pursuant to: (1) 42 U.S.C. § 2000a, providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title I of the ADA, (2) Section 504 of the Rehabilitation Act of 1973, and (3) for any civil rights action authorized by law.

10. This Court has supplemental jurisdiction under New York State laws.

11. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

12. Venue is proper under 28 U.S.C. § 1343 in that acts of discrimination have taken place in this Southern District of New York and is where Plaintiff and Defendants reside pursuant to 28 U.S.C. §1391.

13. On May 23, 2022, Plaintiff timely filed with the U.S. Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination alleging disability discrimination and was assigned Charge No. 520-2022-05283.

14. On June 27, 2022, Plaintiff received a Notice of Right to Sue from the EEOC.

15. Plaintiff commenced this action within ninety days of receipt of his Notice of Right to Sue. (See Exhibit 1).

16. Plaintiff has satisfied all preliminary requirements prior to the commencement of this action.

## PARTIES

17. Plaintiff is an adult male, who resides at 503 Rossway Road, Pleasant Valley, NY 12569 in Dutchess County, New York and who was employed by Defendant.

18. Defendant CHGE is a regulated transmission and distribution utility serving approximately 309,000 electric customers and 84,000 natural gas customers in a defined service territory of

New York State's Mid-Hudson River Valley, and has a corporate headquarters located at 284 South Avenue, Poughkeepsie, NY 12601 in Dutchess County, New York.

19. Upon information and belief, Defendant CHGE employs approximately 1,061 employees.

20. Upon information and belief, for the six-month period ending June 30, 2021, immediately prior to Plaintiff's termination, Defendant CHGE reported total net income of $35,894,000.

21. Upon information and belief, Defendant CHGE's earnings are derived predominately from the revenue it generates from delivering energy to its electric and natural gas customers, as well as through annual rate increases regulated by the New York State Public Service Commission ("PSC").

22. At all relevant times herein, Defendant McGinnis was employed by CHGE as Vice President of Human Resources and Safety and maintains an office at 284 South Avenue, Poughkeepsie, NY 12601 in Dutchess County, New York.

23. At all relevant times herein, Defendant Sammon was employed by CHGE as Director of Human Resources and maintains an office at 284 South Avenue, Poughkeepsie, NY 12601 in Dutchess County, New York.

24. At all relevant times herein, Defendant Tyler was employed by CHGE as Director Operational Technology and maintains an office at 284 South Avenue, Poughkeepsie, NY 12601 in Dutchess County, New York.

25. At all relevant times herein, Defendant Stoner was employed by CHGE as Project Leader Operational Technology and maintains an office at 284 South Avenue, Poughkeepsie, NY 12601 in Dutchess County, New York.

26. At all relevant times herein, each and all of Defendants CHGE, McGinnis, Sammon, Tyler, and Stoner were "employers" within the meaning of the ADA, the Rehabilitation Act of

4

1973, and the NYSHRL, and are therefore prohibited from discriminating on the basis of disability against the Plaintiff with regard to promotion, transfer, termination, rates of pay, or any other form of compensation.

27. Defendants have a responsibility to maintain a work environment free from unlawful interference, discrimination, and retaliation.

## FACTS GIVING RISE TO THIS ACTION

28. Plaintiff is an individual with disabilities as defined under the ADA, Section 504 of the Rehabilitation Act of 1973, and the NYSHRL, and has a record of such impairments, in that he suffers from tendinitis and bursitis post total hip arthroplasty, adjustment disorder with mixed anxiety and depressed mood, Cognitive Impairment, Coronary Artery Disease/Coronary Artery Atherosclerosis ("CAD/CAA"), Hypertension, Obstructive Sleep Apnea ("OSA"), Gastro-Esophageal Reflux Disease ("GERD"), Hyperlipidemia, and tinnitus.

29. Plaintiff's physical and mental impairments substantially limits one or more of his major life activities, including but not limited to, hearing, eating, sleeping, walking, standing, sitting, breathing, learning, concentrating, thinking, communicating, interacting with others, working, executive functioning, and the operations of brain and neurological functions.

30. Plaintiff experiences these limitations in daily interactions and activities.

31. Plaintiff's tendinitis and bursitis require stretching and hip exercises to alleviate pain, stiffness, and achiness, and long periods of prolonged standing or sitting tend to exacerbate these symptoms.

32. As a result of Plaintiff's CAD/CAA, heart conditions, medications, and cognitive disabilities, Plaintiff has lower than expected levels of performance on memory tasks.

33. Plaintiff has a moderate degree of anxiety and a minimal degree of depressive symptoms.

34. Plaintiff's symptoms interfere with his ability to optimize his cognitive abilities.

35. Plaintiff's OSA is also a risk factor for his cognitive difficulties, as it affects his general health and overall quality of life.

36. Plaintiff's OSA causes excessive daytime sleepiness, increased movement during sleep, difficulty falling asleep, difficulty sleeping, impacts his natural sleep-wake cycles, and affects how sleepy he feels during the day.

37. Plaintiff's OSA is associated with daytime sleepiness and cognitive dysfunctions, characterized by impairments of attention, episodic memory, working memory, and executive functions.

38. Plaintiff's tinnitus causes auditory distractions and results in decreased concentration.

   **2016:**

39. Plaintiff worked as a contractor for Defendant, employed by Ethan Allen Workforce Solutions as a Telecommunication System Designer, beginning on January 4, 2016.

40. Plaintiff performed all job duties for Defendant satisfactorily and was hired full time by Defendant on June 29, 2016 as a Senior Telecommunications Systems Designer.

41. As a Senior Telecommunications Systems Designer, Plaintiff was required to possess not only technical knowledge, but also the ability to work effectively with various departments and line crews.

42. Plaintiff's ability to work effectively with CHGE line crews proved to be a valuable resource and he was able to create work packages that streamlined processes that were used as a template for future work.

43. Plaintiff designed a device to simplify the identification of radio locations that saved considerable time and cost in the identification of new radio sites and was a finalist in the company's 2016 Innovation Awards program as determined by an ad hoc internal committee that reviews ideas under the company's Business To Excellence initiative.

44. Plaintiff worked well under pressure and was instrumental in ensuring critical tests for the PSC Milestone testing were successfully completed.

45. For the period 6/29/2016 – 12/31/2016, Plaintiff received a rating of "Effective" (i.e. consistently achieves and may occasionally exceed requirements) for Job Requirements and Expectations, and "Effective" (i.e. consistently demonstrates effective behaviors) for Overall Performance Rating.

46. Additionally, Plaintiff received ratings of "Highly Effective" (i.e. consistently achieves and often exceeds requirements) and Exceptional" (i.e. significantly and consistently exceeds requirements) across several areas of performance of individual goals, as well as job performance and competency assessment during the same six month period in 2016.

47. For the same six-month period in 2016, Plaintiff received a 7.4% performance raise.

48. Plaintiff's 2016 Annual Performance Review was authored by Supervisor/Project Leader Gary Schmid ("Schmid") and approved by Manager Dave Dittmann ("Dittmann"), Group Head/Vice President Paul Haering ("Haering"), and Sammon.

49. At all relevant times in 2016, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations for his disabilities.

**2017:**

50. In September 2017, Plaintiff was diagnosed with Moderate Obstructive Sleep Apnea by his primary care physician Dr. Paul Jee and prescribed a Continuous Positive Airway Pressure ("CPAP") machine to use on a nightly basis.

51. For the period 1/1/2017 – 12/31/2017, Plaintiff received a rating of "Partially Meets Expectations" (i.e. achieves some but not all requirements) for Job Requirements and Expectations, and "Partially Meets Expectations" (i.e. demonstrates some behaviors but not others) for Overall Performance Rating.

52. Additionally, Plaintiff received ratings of "Effective" across several areas of performance of individual goals, as well as job performance and competency assessment during the same twelve-month period in 2017.

53. For the twelve-month period in 2017, Plaintiff received a 1.5% performance raise.

54. Plaintiff's 2017 Annual Performance Review was authored by Supervisor/Project Leader Erin Doane ("Doane") and Tyler, and approved by Dittmann, Haering, and Sammon.

55. At all relevant times in 2017, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations for his disabilities.

**2018:**

56. Defendants Tyler and Stoner stated on Plaintiff's 2018 Annual Performance Review:

   a. "(Plaintiff) needs to be reminded of work orders that need closing or where material transfers are needed".

   b. "When requested to insert a troubleshooting tip into one procedure, he (Plaintiff) had to be reminded to do so".

   c. "(Plaintiff) needs to be reminded to maintain information in ECM regarding completion dates, work orders to close, and material discrepancies".

57. This written 2018 Performance Review, which upon information and belief was drafted in November or December of 2017, is evidence of Defendants Tyler and Stoner acknowledging they knew and were aware of, by their direct firsthand observation, Plaintiff's disabilities of episodic memory loss, working memory, and executive functions impairments.

58. By signing the 2018 Performance Review, Defendant Sammon became aware of Plaintiff's disabilities through third parties Tyler's and Stoner's observations.

59. For the period 1/1/2018 – 12/31/2018, Plaintiff received a rating of "Partially Meets Expectations" for Job Requirements and Expectations, and "Effective" for Overall Performance Rating.

60. Additionally, Plaintiff received ratings of "Effective" and "Highly Effective" across several areas of performance of individual goals, as well as job performance and competency assessment during the same twelve-month period in 2018.

61. For the twelve-month period in 2018, Plaintiff received a 6.2% performance raise.

62. Plaintiff's 2018 Annual Performance Review was authored by Stoner and Tyler, and approved by Dittmann, Haering, and Sammon.

63. At all relevant times in 2018, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations for his disabilities.

   **2019:**

64. Plaintiff was a finalist in the 2019 Innovation Awards program as determined by an ad hoc internal committee, separate from Defendants Sammon, Tyler, and Stoner.

65. During the 1st Quarter 2019, the Network Strategy Department's office space, of which Plaintiff and Defendant Stoner were members of, was remodeled and moved.

66. Defendant Tyler emailed the employees affected by this move and inquired if anyone would like to request a "standing desk" while the new office furniture was being purchased.

67. Plaintiff had a conversation with Defendant Tyler subsequent to her email and indicated yes, he would like a standing desk and that he believed it would help alleviate the excessive daytime sleepiness he experiences and how sleepy he feels during the day from his OSA by being able to stand up while still working at his desk, as well as alternating between standing and sitting to alleviate the pain and stiffness of his tendinitis/bursitis.

68. Plaintiff reiterated this same request in verbal conversations with Defendant Stoner.

69. At no time up until Plaintiff's termination was a standing desk ever provided.

70. Defendants Tyler and Stoner stated on Plaintiff's 2019 Annual Performance Review:

   a. "(Plaintiff) has to be frequently reminded to follow through on minor requests made of him".

   b. "Frequently Jim requires persistent reminders, emails, and notices to follow through and he will need to develop a method to correct this habit".

   c. "Jim had to be frequently reminded to maintain and supply information necessary for work order status reporting and closings".

   d. "Jim also had to be reminded a 2019 goal to supply Tier 2 data for the Wiki ArcGIS was still incomplete".

71. Despite Defendants Stoner and Tyler knowing of and being aware of Plaintiff's impairments that substantially limited his major life activities of memory and the need to be reminded of tasks, Defendants actually ADDED workload, level of difficulty, complications, tasks, and obligations on Plaintiff and stated on his 2019 Annual Performance Review, "Jim's range of responsibilities in 2020 increase in complexity and responsibility".

72. For the period 1/1/2019 – 12/31/2019, Plaintiff received a rating of "Partially Meets Expectations" for Job Requirements and Expectations, and "Partially Meets Expectations" for Overall Performance Rating.

73. Additionally, Plaintiff received ratings of "Effective" and "Highly Effective" across several areas of performance of individual goals, as well as job performance and competency assessment during the same twelve-month period in 2019.

74. For the twelve-month period in 2019, Plaintiff received a 1.5% performance raise.

75. Plaintiff's 2019 Annual Performance Review was authored by Stoner and Tyler, and approved by Dittmann, Haering, and Sammon.

76. At all relevant times in 2019, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations for his disabilities.

   **2020:**

77. Plaintiff was diagnosed with CAD/CAA secondary to Hyperlipidemia by his cardiologist Dr. James Lyons in January 2020.

78. Plaintiff was prescribed Atorvastatin by Dr. Jee in May 2020 for his Hyperlipidemia.

79. Plaintiff was diagnosed with Gastro-Esophageal Reflux Disease ("GERD") by his primary care physician Dr. Jee in May 2020 and prescribed Omeprazole.

80. Upon information and belief, Omeprazole is known as one of the major contributors to impaired cognitive function leading to deterioration of visual and episodic memory, new learning, motor and mental response speed, short-term and sustained attention, retention and manipulation of visuospatial information, and strategy development.

81. Upon information and belief, Data suggest that Omeprazole results in both statistically and clinically significant impairment of cognitive performance.

82. Upon information and belief, Atorvastatin is a leading statin associated with dementia or cognitive impairment.

83. Defendants Tyler and Stoner stated on Plaintiff's 2020 Annual Performance Review:

   a. "it takes continuous reminders from me to Jim".

   b. "some tasks are forgotten".

84. For the period 1/1/2020 – 12/31/2020, Plaintiff received a rating of "Partially Meets Expectations" for Job Requirements and Expectations, and "Partially Meets Expectations" for Overall Performance Rating.

85. Additionally, Plaintiff received ratings of "Effective" and "Highly Effective" across several areas of performance of individual goals, as well as job performance and competency assessment during the same twelve-month period in 2020.

86. For the twelve-month period in 2020, Defendants failed to give Plaintiff a performance raise as he had received in four previous years.

87. Plaintiff's 2020 Annual Performance Review was authored by Stoner and Tyler, and approved by Dittmann, Haering, and Sammon.

88. At all relevant times in 2020, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations for his disabilities.

89. As Plaintiff's supervisors and authors of his Performance Reviews for 2017 – 2020, Defendants Tyler and Stoner knew Plaintiff had a disability when Stoner and Tyler became aware of the condition through their observation.

90. Defendants Tyler and Stoner need only know the underlying facts, not the legal significance of those facts.

91. Defendants Tyler's and Stoner's knowledge of Plaintiff's disability is imputed to the employer CHGE because, as Supervisor and Director, Stoner and Tyler respectively, are CHGE's agent for purposes of vicarious liability for unlawful discrimination.

92. During December 2020, Plaintiff requested reasonable accommodation via continued employment on his 2020 Annual Review in the Self-Assessment section by stating, "I would also like to develop and hone my technical, analytical, operational, and leadership skillsets *that would help me grow inside Central Hudson in a possible future role* in Emergency Response, Electric T&D Operations, Work and Asset Management, New Business Services, or even Internal Audit" (emphasis added).

93. Plaintiff's straightforward request asking for and indicating he desired continued employment with Defendant CHGE is a sufficient request for accommodation.

      **2021:**

94. During February 2021 after Plaintiff's request for reasonable accommodation indicating he wished to remain employed by Defendants, Defendant Stoner informed Plaintiff that she was placing him on a Performance Improvement Plan ("PIP").

95. On or about May 10, 2021, Plaintiff had a conversation with Sammon to discuss his PIP.

96. When discussing the goals on Plaintiff's PIP, Sammon opined "there is a lot on there."

97. Plaintiff agreed and stated, "Yes there is. The number of goals is more than I can accomplish. Realistically the Work Order/budgeting and inventory tasks should be removed from me and back to the Project Leader, or I should be given extra time to complete without penalty".

98. During that conversation with Sammon, Plaintiff again reiterated his desire to stay employed with Defendant CHGE.

99. On or about May 25, 2021, Plaintiff further requested reasonable accommodation and desire to remain employed by Defendant CHGE by applying for a lateral/downgrade transfer to vacant T&D Maintenance Planner position.

100. On or about June 15, 2021, Plaintiff had a conversation with Stoner regarding his PIP.

101. During that conversation with Stoner, she stated "(you) struggle with thinking of critical steps and subsequent steps".

102. Despite Stoner's knowledge and awareness of Plaintiff's cognitive impairments, and despite his requests for reasonable accommodations, Defendants continued their discriminatory practices full speed ahead.

103. On or about June 22, 2021, Plaintiff had a conversation with Operational Technology Director Rob Weizenecker ("Weizenecker"), Defendant Stoner's supervisor.

104. During that conversation, Plaintiff repeated his desire for continued employment and stated, "I need my job, and would welcome a transfer to another department".

105. Weizenecker stated, "process wise, it is where it is and is being handled by HR".

106. On or about July 9, 2021, Plaintiff had a conversation with Stoner regarding his PIP.

107. During that conversation with Stoner, she stated "Spoke to HR, this is still under review, haven't made a decision yet, looking at past appraisals, determination to be made soon. The concern is not meeting deadlines, ratings have been unsteady. Not sure if transfer to a different area, stay in Network Strategy, or termination".

108. During that conversation with Stoner, Plaintiff again reiterated his desire to stay employed with Defendant CHGE.

109. On or about July 21, 2021, Plaintiff had a screening interview with HR Recruiter Ryan Mongroo regarding the open T&D Maintenance Planner position he had applied for.

110.    Mongroo stated, "This interview is to make sure you're qualified for the position, and you are.  You should hear next steps in a couple weeks".

111.    On July 29, 2021, Plaintiff received email from HR Recruiter Diane D'Alessandro ("D'Alessandro") scheduling second interview for the open T&D Maintenance Planner position, scheduled for August 3, 2021 with Hiring Manager Jason Puckett, District Superintendent Kyle DeFalco, HR Recruiter Diane D'Alessandro, HR Recruiter Ryan Mongroo, and HR Recruiter Michaela Ryan.

112.    During monthly PIP status reviews with Defendant Stoner in March, April, and May, Plaintiff was rated as "Partially Meets Requirements" (i.e. achieves some but not all expected requirements).

113.    Some of Stoner's comments on Plaintiff's PIP status reviews were:

   a.   Jim will require two to three times the amount of time anticipated to complete some tasks as others are capable of.

   b.   Jim often forgets specific directions given to him in meetings or emails.

   c.   There are continued reminders and follow ups on my part to ensure Jim is not forgetting a task.

114.    In the afternoon of August 2, 2021, Defendant Stoner called Plaintiff and directed him to report to McGinnis' office as soon as possible.

115.    Plaintiff arrived at McGinnis' office where Stoner and Director of Security Rich Nuzzo ("Nuzzo") were present.

116.    During that meeting, McGinnis notified Plaintiff of termination, provided pretextual reasons for his termination of "level of performance and consistency over the past couple of years", and proffered a Separation Agreement and Release offering one month severance.

117.    Plaintiff asked McGinnis about the scheduled interview for the open T&D Maintenance

Planner position for which he had applied and had an interview scheduled the next day,

wherein McGinnis stated, "**I ultimately made the decision that we were not going to have**

**you, give you the opportunity to apply for that. There were some performance**

**concerns that we felt could carry into that role. It's a very different role, it's a role that**

**is significantly below the level that your current role is, so I'm feeling like for a number**

**of reasons it didn't make sense for us to move forward, so that was the determination**

**that I made**" (emphasis added).

118.    Plaintiff was escorted off the property by Nuzzo and then followed home to surrender

company items.

## FIRST CAUSE OF ACTION
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION UNDER ADA
### (Against All Defendants)

119.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

118 as if fully set forth herein.

120.    Defendants failed in their duty under the ADA to ascertain whether they had some job

that the Plaintiff might have been able to fill.

121.    Defendants discriminated against Plaintiff on the basis of disability in regard to terms,

conditions, and privileges of employment.

122.    Defendants failed to provide reasonable accommodations to the known physical or

mental limitations of Plaintiff.

123.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an

amount to be determined at trial.

## SECOND CAUSE OF ACTION

## DISCRIMINATORY COMPENSATION UNDER ADA
### (Against All Defendants)

124.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

123 as if fully set forth herein.

125.    Defendants discriminated against Plaintiff on the basis of disability in regard to his

compensation and failing to provide an annual raise.

126.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an

amount to be determined at trial.

## THIRD CAUSE OF ACTION
## DENYING EMPLOYMENT OPPORTUNITIES UNDER ADA
### (Against All Defendants)

127.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

126 as if fully set forth herein.

128.    Defendant's denial of lateral/downgrade transfer was based on the need of the Defendant

to make reasonable accommodation to the physical or mental impairments of the Plaintiff.

129.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an

amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## DISCRIMINATORY USE OF QUALIFICATION STANDARDS AND SELECTION
## CRITERIA UNDER ADA
### (Against All Defendants)

130.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

129 as if fully set forth herein.

131.    Defendants screened out Plaintiff as an individual with a disability for a

lateral/downgrade transfer.

132.   By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### DISCRIMINATORY DISCHARGE AND TERMINATION UNDER ADA
### (Against All Defendants)

133.   Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 132 as if fully set forth herein.

134.   Defendants discriminated against Plaintiff on the basis of disability in regard to wrongful termination.

135.   By virtue of the wrong conduct herein described above, and by virtue of having lost employment, Plaintiff has been damaged at an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION UNDER SECTION
### 503 OF THE REHABILITATION ACT OF 1973
### (Against All Defendants)

136.   Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 135 as if fully set forth herein.

137.   Defendants failed to provide reasonable accommodations to the known physical or mental limitations of Plaintiff.

138.   By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION UNDER SECTION
### 504 OF THE REHABILITATION ACT OF 1973
### (Against All Defendants)

139.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 138 as if fully set forth herein.

140.    Defendants failed to provide reasonable accommodations to the known physical or mental limitations of Plaintiff.

141.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
### FAILURE TO TAKE AFFIRMATIVE ACTION UNDER SECTION 503 OF THE REHABILITATION ACT OF 1973
### (Against All Defendants)

142.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 141 as if fully set forth herein.

143.    Defendants failed to take affirmative action to employ and advance in employment qualified individuals with disabilities, to wit, the Plaintiff.

144.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### FAILURE TO TAKE AFFIRMATIVE ACTION UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973
### (Against All Defendants)

145.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 144 as if fully set forth herein.

146.    Defendants failed to take affirmative action to employ and advance in employment qualified individuals with disabilities, to wit, the Plaintiff.

147.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## DISCRIMINATORY COMPENSATION UNDER SECTION 503 OF THE
## REHABILITATION ACT OF 1973
### (Against All Defendants)

148.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 147 as if fully set forth herein.

149.    Defendants discriminated against Plaintiff on the basis of disability in regard to his compensation and failing to provide an annual raise.

150.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
## DISCRIMINATORY COMPENSATION UNDER SECTION 504 OF THE
## REHABILITATION ACT OF 1973
### (Against All Defendants)

151.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 150 as if fully set forth herein.

152.    Defendants discriminated against Plaintiff on the basis of disability in regard to his compensation and failing to provide an annual raise.

153.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
## DISCRIMINATORY DISCHARGE AND TERMINATION UNDER SECTION 503 OF
## THE REHABILITATION ACT OF 1973
### (Against All Defendants)

154.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 153 as if fully set forth herein.

155.    Defendants discriminated against Plaintiff on the basis of disability in regard to wrongful termination.

156.    By virtue of the wrong conduct herein described above, and by virtue of having lost employment, Plaintiff has been damaged at an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION
## DISCRIMINATORY DISCHARGE AND TERMINATION UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973
## (Against All Defendants)

157.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 156 as if fully set forth herein.

158.    Defendants discriminated against Plaintiff on the basis of disability in regard to wrongful termination.

159.    By virtue of the wrong conduct herein described above, and by virtue of having lost employment, Plaintiff has been damaged at an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION
## DENIAL OF EQUALITY OF OPPORTUNITY UNDER NYSHRL
## (Against All Defendants)

160.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 159 as if fully set forth herein.

161.    Defendants denied Plaintiff's opportunity to obtain employment without discrimination because of disability.

162.    Defendants denied the Plaintiff's equal opportunity to participate fully in the economic, cultural and intellectual life of the state.

163.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an
amount to be determined at trial.

## FIFTEENTH CAUSE OF ACTION
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION UNDER NYSHRL
### (Against All Defendants)

164.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through
163 as if fully set forth herein.

165.    Defendants refused to provide reasonable accommodation to the known disabilities of
Plaintiff in connection with his job.

166.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an
amount to be determined at trial.

## SIXTEENTH CAUSE OF ACTION
## DISCRIMINATORY COMPENSATION UNDER NYSHRL
### (Against All Defendants)

167.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through
166 as if fully set forth herein.

168.    Defendants discriminated against Plaintiff on the basis of disability in regard to his
compensation and failing to provide an annual raise for two straight years.

169.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an
amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION
## DISCRIMINATORY TERMS, CONDITIONS, OR PRIVILEGES UNDER NYSHRL
### (Against All Defendants)

170.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through
169 as if fully set forth herein.

171.   Defendants discriminated against Plaintiff on the basis of disability with respect to the terms, conditions, or privileges of employment.

172.   By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an amount to be determined at trial.

## EIGHTEENTH CAUSE OF ACTION
## DISCRIMINATORY DISCHARGE FROM EMPLOYMENT UNDER NYSHRL
### (Against All Defendants)

173.   Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 172 as if fully set forth herein.

174.   Defendants discriminated against Plaintiff on the basis of disability in regard to wrongful discharge and termination.

175.   By virtue of the wrong conduct herein described above, and by virtue of having lost employment, Plaintiff has been damaged at an amount to be determined at trial.

## NINETEENTH CAUSE OF ACTION
## NEW YORK STATE EXECUTIVE LAW – AIDING AND ABETTING
### (Against Individual Defendants)

176.   Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 175 as if fully set forth herein.

177.   New York State Executive Law Section 296(6) provides: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

178.   Defendants engaged in an unlawful discriminatory practice under this provision by aiding, abetting, compelling, and/or coercing the other Defendants' discriminatory behavior as stated herein.

## TWENTIETH CAUSE OF ACTION

## CIVIL CONSPIRACY
### (Against Individual Defendants)

179.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

178 as if fully set forth herein.

180.    Defendants Sammon, Tyler, and Stoner had an agreement (i.e. manifestation of mutual

assent) to commit civil conspiracy by affixing their respective signatures on Plaintiff's

Annual Performance Reviews.

181.    Defendants Sammon, Tyler, and Stoner participated in the conspiracy and committed an

overt act in furtherance of the agreement by their collective statements on Plaintiff's Annual

Performance Reviews.

182.    Defendants Sammon, Tyler, and Stoner demonstrated their intentional participation in the

furtherance of their plan and purpose to deny reasonable accommodations, deny employment

opportunities, and ultimately unlawfully terminate Plaintiff by their written comments and

respective signatures on Plaintiff's Annual Performance Reviews.

183.    Plaintiff was damaged and injured by loss of income and in his equal opportunity right to

participate fully in the economic, cultural, and intellectual life of the state.

184.    By virtue of the wrong conduct herein described above, Plaintiff has been damaged at an

amount to be determined at trial.

## TWENTY FIRST CAUSE OF ACTION
## QUANTUM MERUIT
### (Against All Defendants)

185.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

184 as if fully set forth herein.

186.    Plaintiff performed community outreach events in good faith for Defendant, including but

not limited to, participating in Defendant's education booth at the Dutchess County Fair,

24

participating with Operation Homefront's Back to School Brigade at Stewart Air National

Guard Base[2], participating with The Wall That Heals event[3], and delivering meals to front

line workers during the Covid pandemic[4],[5] (see Exhibit 2).

187.    Defendant accepted Plaintiff's efforts at community outreach services, to include use of

his name, image, and statements, and benefited from the "good light" Defendant CHGE

presented itself to customers, PSC, elected officials, and members of the public.

188.    Plaintiff had an expectation of compensation of those community outreach services,

specifically through an expectation of continued employment.

189.    The reasonable value of Plaintiff's services, including use of his good name, image, and

statements, can only be assessed at an amount determined at trial.

## TWENTY SECOND CAUSE OF ACTION
## PRIMA FACIE TORT
### (Against All Defendants)

190.    Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through

189 as if fully set forth herein.

191.    By the acts and series of acts described herein which would otherwise be lawful,

Defendants intentionally inflicted harm upon Plaintiff.

---

[2] https://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterCaseNo=17-g-0460&submit=Search  Defendant submitted Plaintiff's name and image in a News Release dated September X, 2019 as part of PSC Rate Matter/Case Details: 17-01632/17-G-0460 filing as an Attachment in its 2020 Mandated Outreach & Education Plan.
[3] Central Hudson Salutes Our Veterans, Nov 9, 2018 (https://www.youtube.com/watch?v=V-WrqH-FybY)  Defendant's social media video featured veteran Plaintiff and the important contributions he made in serving the nation and Defendant's customers.
[4] https://m.facebook.com/watch/?v=527699084576649&_rdr  Defendant's social media featured Plaintiff as part of a team that delivered meals to people in need and frontline workers during COVID-19.
[5] https://www.cenhud.com/globalassets/pdf/about-us/powering-connections-spring-summer-2020.pdf  Defendant used Plaintiff's name and image in its quarterly consumer outreach publication.

192.    But for Defendants' intentional interference with Plaintiff's attempts to receive reasonable accommodation and maintain continuous employment with Defendant, Plaintiff suffered special damages as a direct result of Defendants' tortious acts via loss of compensation, the full value of which can only be assessed at an amount determined at trial.

193.    Given Plaintiff's highly effective and exceptional performance for the Defendants, and Defendants' unabashed use and reliance on Plaintiff as an honorably discharged veteran in multiple community outreach events that benefited Defendant CHGE, Defendants had no excuse or justification for interfering with Plaintiff's continued employment with Defendant.

194.    Even if Defendants' motives are ultimately deemed to be non-discriminatory, then the sole motivation for Defendants' actions could only have been motivated by "disinterested malevolence," or the intent to simply harm Plaintiff.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests relief and judgment as set forth below:

A.    Injunctive relief via reinstatement to Plaintiff's standing and employment with Defendant CHGE prior to being terminated,

B.    An Order enjoining Defendant CHGE from any and all use, past or future, of Plaintiff's name, image, likeness, and statements on Defendant's social media, PSC filings, press releases, customer or consumer publications, and the like,

C.    An Order enjoining Defendants from any continued and further wrongful conduct,

D.    Declaring Defendants to have violated the ADA, the Rehabilitation Act, the NYSHRL, and the NY CPLR,

E.    Awarding Plaintiff monetary damages for all of Defendants' wrongful conduct in an amount to be determined at trial,

26

F.     Awarding Plaintiff recovery of his reasonable attorney's fees, filing fees, court costs, and other expenses incurred in pursuing his rights in bringing this action,

G.     Awarding Plaintiff damages, including back pay, front pay, interest, benefits or the full value thereof, and such actual, compensatory, and punitive damages as may be proven by Plaintiff and to which he is entitled,

H.     Any and all other relief available to Plaintiff under applicable law, and

I.     An award for such other and further relief as the Court may deem just and proper.

Dated: Pleasant Valley, NY

September 23, 2022

Respectfully Submitted,

By: _____

James W. Rhoda, Jr.
Plaintiff Pro Se
503 Rossway Road
Pleasant Valley, NY 12569
Telephone: 301-351-6881
Facsimile: 845-209-2123
Email: foneman401@gmail.com

## PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically and do consent to receive documents electronically.


Dated: Pleasant Valley, NY                    Respectfully Submitted,

September 23, 2022                             By: _____

                                              James W. Rhoda, Jr.
                                              Plaintiff Pro Se
                                              503 Rossway Road
                                              Pleasant Valley, NY 12569
                                              Telephone: 301-351-6881
                                              Facsimile: 845-209-2123
                                              Email: foneman401@gmail.com