UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

JAMES W. RHODA, JR.,

                                    Plaintiff,

            -against-                                    7:22–CV–08135–NSR

CENTRAL HUDSON GAS & ELECTRIC CORP.,
SHARON MCGINNIS, JILL SAMMON,
ERICA TYLER, TERA STONER,
JOHN AND JANE DOES 1-10,
PAUL HAERING, DAVID DITTMANN
                                    Defendants.

-----------------------------------------------------------x



---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

---



JAMES W. RHODA, JR.
Plaintiff *Pro Se*
503 Rossway Road
Pleasant Valley, NY 12569
Telephone: 301-351-6881
Facsimile: 845-209-2123
Email: foneman401@gmail.com

**TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES.........................................................................................ii

PRELIMINARY STATEMENT....................................................................................1

STATEMENT OF FACTS...........................................................................................2

ARGUMENT...............................................................................................................4

I.     THE MOTION TO DISMISS STANDARD.................................................4

II.    PLAINTIFF HAS SUFFICIENTLY PLED CLAIMS OF DISCRIMINATION...........5

       A.    Defendants Had Notice of Plaintiff's Disabilities......................................5

       B.    Defendants Failed to Offer Plaintiff Reasonable Accommodations.................7

       C.    Defendants Would Not Have Discriminated Against Plaintiff in Compensation, Discharge, and Wrongful Termination But-For His Disabilities...............................8

III.   PLAINTIFF HAS SUFFICIENTLY ALLEGED NEW YORK COMMON LAW DERIVATIVE CLAIMS.......................................................................12

       A.    Individual Defendants Are Liable For Aiding And Abetting Unlawful Employment Practices Under The New York Executive Law........................................12

       B.    Defendants Committed Civil Conspiracy ..............................................13

       C.    Defendants Are Liable For Quantum Meruit ..........................................14

       D.    Defendants Are Liable For Prima Facie Tort ..........................................14

IV.   COMPLAINT DOES NOT CONTAIN THRESHOLD PRECLUSIONS

       A.    Federal Claims Against the Individual Defendants

       B.    CHGE Receives Federal Assistance

       C.    Defendants' Continuing Violations of Discriminatory Compensation

CONCLUSION.........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                                  **PAGE**

<u>Adams v. Rice,</u>
    531 F.3d 936, 943 (D.C.Cir.2008)………………………………………………..8

<u>Alexander & Alexander of New York, Inc. v. Fritzen,</u>
    68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986)…………………………15

<u>Arista Records, LLC v. Doe 3,</u>
    604 F.3d 110, 120 (2d Cir. 2010)………………………………………………..4

<u>Ashcraft v. Iqbal,</u>
    129 S.Ct. 1937, 1949 (2009)……………………………………………………4

<u>Bell Atl. Corp. v. Twombly,</u>
    550 U.S. 544, 570 (2007)………………………………………………….....4

<u>Borkowski v. Valley Cent. Sch. Dist.,</u>
    63 F.3d 131, 138 (2d Cir. 1995)………………………………………………..11

<u>Boykin v. KeyCorp,</u>
    521 F.3d 202, 213-14 (2d Cir. 2008)………………………………………….....4

<u>Brady v. Wal-Mart Stores, Inc.,</u>
    531 F.3d 127, 135 (2d Cir.2008)……………………………………………....10

<u>Brown v. Coach Stores, Inc.,</u>
    163 F.3d 706,710 (2d Cir. 1998)………………………………………………..4

<u>Chavis v. Chappius,</u>
    618 F.3d 162, 170 (2d Cir. 2010)……………………………...…………...………2

<u>Curiano v. Suozzi,</u>
    63 N.Y.2d 113, 117 (1984)………………………………………………………14

<u>Daniel v. T & M Prot. Res., Inc.,</u>
    992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)……………………………………....5

<u>Delgado v. Donald J. Trump For President, Inc.,</u>
    No. 19 Civ. 11764 (AT), Dist. Court, (S.D.N.Y. Mar 14, 2022)…………………………16

<u>Deravin v. Kerik,</u>
    335 F.3d 195,200 (2d Cir. 2003)………………………………………………..4

DeWitt v. Lieberman,
        No. 97 Civ. 4651, 1999 WL 13236 *12 (S.D.N.Y. Jan.13, 1999)..............................14

Erickson v. Pardus,
        551 U.S. 89, 94 (2007)...........................................................................................5

Fairstein v Netflix, Inc.,
        553 F Supp 3d 48, 57-58 (S.D.N.Y. 2021)......................................................15

Fitzgerald v. Henderson,
        251 F.3d 345, 359 (2d Cir. 2001).....................................................................18

Fleming v. Verizon New York, Inc.,
        419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005)......................................................17

Glaser v. Gap Inc.,
        994 F.Supp.2d 569, 572-73 (S.D.N.Y. 2014)....................................................12

Gonsalves v. J.F. Fredericks Tool Co., Inc.,
        964 F. Supp. 616, 621 (D. Conn. 1997)............................................................13

Goonan v. Fed. Reserve Bank of N.Y.,
        916 F.Supp.2d 470, 480 (S.D.N.Y. 2013).........................................................11

Graves v. Finch Pruyn & Co.,
        457 F.3d 181, 185 (2d Cir.2006).......................................................................10

Hicks v. IBM,
        44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999)........................................................13

Koch v. Christie's Int'l PLC,
        699 F.3d 141, 145 (2d Cir. 2012).......................................................................5

Lester v. Mount Pleasant Cottage School Union Free School District,
        No. 19-CV-5247 (KMK), 2020 (S.D.N.Y. Jul. 2, 2020)......................................4

Matima v. Celli,
        228 F.3d 68, 81 (2d Cir.2000)............................................................................2

Medlin v. Rome Strip Steel Co.,
        294 F.Supp.2d 279, 292 (N.D.N.Y.2003)..........................................................10

Mendillo v. Prudential Ins. Co. of America,
        156 F. Supp. 3d 317 (D. Conn. 2016)................................................................10

Natofsky v. City of N.Y.,

921 F.3d 337, 348 (2d Cir. 2019)........................................................12

Nielsen v. Rabin,
    746 F.3d 58, 62 (2d Cir. 2014........................................................2

Parker v. Columbia Pictures Indus.,
    204 F.3d 326, 332 (2d Cir.2000)........................................................11

Reynolds v. Brock,
    815 F.2d 571, 574 (9th Cir.1987)........................................................13

Robinson v. Gucci America,
    No. 11-CV-3742 (JPO), 2012 (S.D.N.Y. Jan. 26, 2012)........................................................4

Ryan v. Grae & Rybicki, P.C.,
    135 F.3d 867, 870 (2d Cir.1998)........................................................11

Schmidt v. Safeway Inc.,
    864 F. Supp. 991 (D. Or. 1994)........................................................6,10

Solomon v. County of Nassau,
    No. CV 20-5227 (AYS), Dist. Court, (E.D.N.Y. Dec 1, 2021)........................................................17

Stone v. City of Mount Vernon,
    118 F.3d 92, 96-97 (2d Cir.1997)........................................................11

Sykes v. Bank of Am.,
    723 F.3d 399, 403 (2d Cir. 2013)........................................................5

Swierkiewicz v. Sorema NA.,
    534 U.S. 506, 508 (2002)........................................................4

Tarquino V. Muse Enterprises, Inc.,
    No. 19 Civ. 3434 (AT), Dist. Court, (SDNY 2020)........................................................15

Taylor v. Principal Fin. Group, Inc.,
    93 F.3d 155, 164 (5th Cir.1996)........................................................8

Tomka v. Seiler Corp.,
    66 F.3d 1295, 1317 (2d Cir.1995)........................................................13

Vioni v. Providence Inv. Mgmt., LLC,
    750 F. App'x 29, 32 (2d Cir. 2018)........................................................15

Zolotar v. New York Life Ins. Co.,
    576 N.Y.S.2d 850, 854 (App. Div. 1991)........................................................15

**STATUTES**

Fed. R. Civ. P. 4(d)(h) ..................................................................................... 4

Fed. R. Civ. P. 8(a) ......................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1

N.Y. Exec. Law § 296(6)................................................................................13

29 C.F.R. 1630.2(g)(3) & (P)..........................................................................12

29 U.S. Code § 794(a).....................................................................................16

42 U.S.C. § 12102(2)(a)...................................................................................11

42 U.S.C. § 12102(1)(C) .................................................................................12

42 U.S.C. § 12111(5)(a)...................................................................................16

42 U.S.C. § 12112(a)....................................................................................5, 16

## PRELIMINARY STATEMENT

Plaintiff James W. Rhoda, Jr. ("Plaintiff") submits this memorandum of law in opposition to the motion to dismiss that was submitted by Defendants Central Hudson Gas & Electric Corp. ("CHGE"), Sharon McGinnis ("McGinnis"), Jill Sammon ("Sammon"), Erica Tyler ("Tyler"), Tera Stoner ("Stoner"), John and Jane Does 1-10, ("Does" that Plaintiff will name and identify once they are disclosed), Paul Haering ("Haering"), and David Dittmann ("Dittmann") hereinafter collectively "Defendants". This action was brought by Plaintiff for relief and remedy of Defendants' wrongful discriminatory conduct under the Americans with Disabilities Act ("the ADA"), the Rehabilitation Act of 1973 ("the RA"), the New York State Human Rights Law ("the NYSHRL"), and New York civil law torts. Defendants now move under Fed. R. Civ. P. 12(b)(6).

Plaintiff's First Amended Complaint (ECF No. 4) sufficiently states claims for relief that are plausible and therefore Defendants' motion should be denied. Further, this case contains material issues of fact that require the denial of Defendants' motion to dismiss.

The Defendants' motion to dismiss contends that the Amended Complaint fails to state a claim upon which relief can be granted and goes on to provide several unpersuasive reasons for dismissal. The basis for Defendants' arguments – primarily that Defendants did not have knowledge of Plaintiff's disabilities, Plaintiff did not provide notice that accommodations were required and did not request accommodations, and discrimination was not the but-for cause of Defendant's unlawful conduct– are demonstrably false. These arguments, which in actuality amount to gaslighting and mischaracterizations, bring forth factual disputes that are not appropriately resolved on a motion to dismiss under longstanding Second Circuit case law.

1

Additionally, when Plaintiff's claims are taken as true, as they must be at this early stage of proceedings, the sufficiently stated claims pass review under both federal and state law.

As such, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss. In the alternative, Plaintiff requests leave to amend any matters in the Amended Complaint that the Court might view as lacking (*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010). "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citation omitted).

## STATEMENT OF FACTS

Acknowledging that the Court encourages and appreciates brevity, a complete recitation of the facts stated in the Amended Complaint (*Id.* at ¶¶ 32 – 153) is not necessary. Plaintiff is an honorably discharged, special disabled veteran[1] of the Marine Corps who suffers from several service-connected disabilities and limitations, namely: tendinitis and bursitis post total hip arthroplasty, lumbosacral strain/altered gait related to hip arthroplasty, adjustment disorder with mixed anxiety and depressed mood, Cognitive Impairment, Coronary Artery Disease/Coronary Artery Atherosclerosis ("CAD/CAA"), Hypertension, Obstructive Sleep Apnea ("OSA"), Gastro-Esophageal Reflux Disease ("GERD"), Hyperlipidemia, and tinnitus (*Id.* at ¶ 32 – 33).

---

[1] Shortly after starting employment, at Defendant McGinnis' request, Plaintiff self-identified as a protected veteran under the disabled veteran category. The U.S. Department of Labor is currently investigating Defendant CHGE's violation of affirmative action and disability discrimination under 38 U.S.C. 4212

Plaintiff has physical and mental impairments that substantially limits one or more of his major life activities, has a record of such impairments, and Defendants regarded him as having such impairments (*Id.* at ¶¶ 34 – 43). Defendants' motion and memorandum in support of the motion do not contest the fact that Plaintiff's disabilities, impairments, and limitations qualifies him for protection under the ADA.

Plaintiff was employed by Defendants from 2016 – 2021, the first six months as a contractor, and then subsequently hired full time as a Senior Telecommunications Systems Designer. At all relevant times, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodations for his disabilities (*Id.* at ¶¶ 44 – 45). Defendants' motion and memorandum in support of the motion do not contest the fact that Plaintiff was able to perform the essential functions of his position.

Despite Defendants' statements to the contrary, Defendants were aware of Plaintiff's disabilities and regarded him as having limitations (*Id.* at ¶¶ 75, 90, 104, 115, 123, 129). Plaintiff requested reasonable accommodations from Defendants on several occasions (*Id.* at ¶¶ 87 – 88, 118 – 119, 125 – 127, 132). Defendants failed to engage in the interactive process with Plaintiff and failed to grant even a single accommodation. Instead, Defendants unlawfully terminated Plaintiff due to his impairments and limitations.

Pursuant to Fed. R. Civ. P. 8(a), Plaintiff's Amended Complaint contained: (1.) a short and plain statement of the grounds for the Court's jurisdiction, (2.) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3.) a demand for the relief sought. Defendants have been given fair notice of the Plaintiff's claims and the grounds upon which those claims rest.

Plaintiff effectuated service of the Summons and Amended Complaint on Defendant

CHGE through the Office of the Secretary of State, the State of New York, on December 15,

2022 (Fed. R. Civ. P. 4(h)). Additionally, Plaintiff sent a Notice of Lawsuit and Request to

Waive Service via first-class mail, certified return receipt, to each of the individual Defendant's

last known home address and last known business address on December 16, 2022 (Fed. R. Civ.

P. 4(d)).

## ARGUMENT

### I.    THE MOTION TO DISMISS STANDARD

In order to survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcraft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Prior to *Ashcraft, Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 508 (2002) stated that "the burden-

shifting framework 'is an evidentiary standard, not a pleading requirement'". The Court

expressly reaffirmed this holding in the *Twombly* decision. See 550 U.S. at 569-70 (citing

*Swierkiewicz*, 534 U.S. at 508). Additionally, the Second Circuit has also affirmed the continued

force of the *Swierkiewicz* rule even after *Twombly* and *Iqbal*. See *Arista Records, LLC v. Doe 3*,

604 F.3d 110, 120 (2d Cir. 2010); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008).

Furthermore, according to *Robinson v. Gucci America*, No. 11-CV-3742 (JPO), 2012

(S.D.N.Y. Jan. 26, 2012), "the Second Circuit has held that 'the pleading requirements in

discrimination cases are very lenient, even de minimis,'" *Deravin v. Kerik*, 335 F.3d 195,200 (2d

Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706,710 (2d Cir. 1998)).

In addition, when considering a motion to dismiss, the Court in *Lester v. Mount Pleasant*

*Cottage School Union Free School District*, No. 19-CV-5247 (KMK), 2020 (S.D.N.Y. Jul. 2,

2020) ruled, "the Court is required to 'accept as true all of the factual allegations contained in the [SAC].'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); see also *Nielsen* (same). The Court must also "draw all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [the complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).

Plaintiff's Amended Complaint has met these standards and has alleged factual allegations that are plausible. As such, the Complaint should not be dismissed because the facts as alleged are sufficient to allow the Court to conclude that Defendants are in fact liable for their unlawful conduct and that Plaintiff is entitled to the relief he seeks.

## II.   **PLAINTIFF HAS SUFFICIENTLY PLED CLAIMS OF DISCRIMINATION**

The ADA prohibits discrimination by employers against qualified individuals with a disability. 42 U.S.C. § 12112(a).

In the motion to dismiss, Defendants attempt to assert that Plaintiff's disability discrimination claims must be dismissed because: Defendants lacked knowledge of Plaintiff's disabilities, Plaintiff did not provide notice that accommodations were required and never requested accommodations, and discrimination was not the but-for cause of Defendant's unlawful conduct. Patently false, each of those arguments are addressed in turn below.

### A.   **Defendants Had Notice of Plaintiff's Disabilities and Limitations**

Defendants argue they "cannot have discriminated against Plaintiff if they did not know of those alleged disabilities in the first place" (Def. Mem. 14). Defendant's purported lack of

knowledge is false, and this honorable Court should not be misled by Defendants. Defendants Stoner and Tyler, as authors of Plaintiff's performance evaluations from 2017 – 2021, had knowledge, by their direct firsthand observation, of Plaintiff's disabilities and limitations of episodic memory loss, working memory deficiencies, and learning, thinking, interacting with others, and executive function impairments. So much so that they wrote about Plaintiff's limitations (ECF 4 at ¶¶ 75, 90, 104, 123, 132). Defendants Dittmann, Haering, Sammon, and McGinnis had knowledge and became aware of Plaintiff's disabilities and limitations through third party Stoner's and Tyler's observations.

According to *Schmidt v. Safeway* Inc., 864 F. Supp. 991 (D. Or. 1994), "An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation". *Schmidt* goes on to state, "The employer need only know the underlying facts, not the legal significance of those facts. Accordingly, whether defendant knew alcohol abuse is considered a "disability" is of no consequence here. It is sufficient that defendant knew plaintiff had an alcohol problem". Here, Defendants Stoner, Tyler, Dittmann, Haering, Sammon, and McGinnis knew the underlying facts – Plaintiff suffered from episodic memory loss, working memory deficiencies, and learning, thinking, interacting with others, and executive function impairments – so it is sufficient that Defendants knew Plaintiff had disability impairments that resulted in his limitations.

Defendants' purported lack of knowledge does not stop there. Not only do the Defendants acknowledge their knowledge of Plaintiff's disabilities, but they also disingenuously omit to the Court that Plaintiff was required to submit to a pre-employment physical/medical examination with a medical professional of Defendant CHGE's choosing. Subsequent to

Defendant CHGE making a conditional job offer to Plaintiff on 6/20/2016, the Plaintiff attended

and participated with a medical examination that was administered by a health care professional,

which did in fact reveal evidence of Plaintiff's three diagnosed physical impairments at the time,

namely, total hip replacement, pre-hypertension, and overweight (i.e. obesity). Hip replacement,

pre-hypertension, and obesity are physical impairments that substantially limits one or more

major life activities of an individual, such as performing manual tasks, eating, sleeping, walking,

standing, lifting, bending, breathing, concentrating, thinking, communicating, and working.

Thereafter, Defendant CHGE Human Resources Administrator Gary Courtney

("Courtney") acknowledged, via electronic mail to Plaintiff on 6/23/2016, Plaintiff's pre-

employment medical examination and stated, "I received the physical report". Defendant CHGE

was clearly on notice and aware of Plaintiff's: (1.) actual disabilities, (2.) record of disabilities,

and (3.) regarded Plaintiff as having a physical impairment. It is plausible and more likely than

not that Courtney shared Plaintiff's medical information with the appropriate decision-makers

involved in the hiring process, to wit, Defendants McGinnis, Sammon, Haering, and Dittmann,

so they could make employment decisions regarding Plaintiff. Defendant CHGE provided a

printed copy of Courtney's 6/23/2016 email to Plaintiff after he was wrongfully terminated, so

Defendant's knowledge of Plaintiff's disabilities is irrefutable.

Suffice it to say, there is evidentiary support for the factual allegation that Defendants

knew of and were fully aware of Plaintiff's actual and record of disabilities present through the

date of his pre-employment physical and upon starting employment. Employer CHGE knew

Plaintiff had disabilities when CHGE became aware of the conditions through the third-party

health care professional. It is unclear why Defendant's Counsel has withheld this vital

information from this Court and inaccurately alleged that Defendants did not know of Plaintiff's

7

disabilities, but Plaintiff asserts that failure to make such disclosure is the equivalent of an affirmative misrepresentation.

Furthermore, Plaintiff had several doctor appointments during his employment where he requested personal time off away from work to attend the appointment. On each of those occasions, Plaintiff informed his supervisor, Defendant Stoner, of the request for time off for medical reasons, the medical reasons for the appointment, and his diagnosed disabilities (ECF 4, at ¶¶ 32 - 43).

Additionally, Defendant Stoner correctly perceived Plaintiff to be disabled and regarded him as having disabilities and limitations. Firstly, during a conversation between Plaintiff and Stoner on or about 3/31/2021, Stoner stated, "I need to see improvement with you in **critical thinking**", indicating Stoner's knowledge of Plaintiff's impairment with thinking. Secondly, during a conversation between Plaintiff and Stoner on or about 4/30/2021, Stoner stated, "you really got [sic] to be **focused** in May", indicating Stoner's knowledge of Plaintiff's inability to focus. Thirdly, during a conversation between Plaintiff and Stoner on or about 6/15/2021, Stoner stated, "you struggle with **thinking** of critical steps and subsequent steps" (ECF 4, at ¶¶ 129). Each of these statements by Defendant Stoner indicate her knowledge of Plaintiff's cognitive impairments and limitations that substantially limit his major life activities (ECF 4, at ¶¶ 37 – 43). During each of these conversations, Plaintiff advised Stoner that his impairments and limitations in thinking and focusing were a result of his OSA.

As the Court in *Adams v. Rice*, 531 F.3d 936, 943 (D.C.Cir.2008) stated, "An employer's knowledge of an employee's limitation — as opposed to her impairment — is certainly relevant when the disabled employee requests a workplace accommodation. *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164 (5th Cir.1996) ("This distinction is important because the ADA

8

requires employers to reasonably accommodate limitations, not disabilities."). But in pure discrimination cases like Adams's, an employer's knowledge of the precise limitation at issue is irrelevant; so long as the employee can show that her impairment ultimately clears the statutory hurdle for a disability — i.e., it substantially limited a major life activity — the employer will be liable if it takes adverse action against her based on that impairment". Like in *Adams*, Defendant CHGE should be held liable for taking adverse action against Plaintiff in this matter as well. Defendant's position that "Plaintiff's claims therefore fail for lack of knowledge of the Alleged Disabilities" is belied by the evidence and should be unavailing (Def. Mem. 14).

**B.    Defendants Failed to Offer Plaintiff Reasonable Accommodations**

Plaintiff requested reasonable accommodation for excessive daytime sleepiness from his OSA, and the pain and stiffness he suffers from his hip tendinitis/bursitis and lumbosacral strain, by means of a standing desk, first with Defendant Tyler and then with Defendant Stoner (ECF 4 at ¶¶ 86 – 89). Both requests were ignored by Tyler and Stoner. Defendants' motion and memorandum in support of the motion do not contest this fact.

Plaintiff further requested reasonable accommodation from Defendant Sammon by way of job restructuring and extra time on tasks (ECF 4 at ¶¶ 124 – 126). This request was ignored by Sammon. Defendants' motion and memorandum in support of the motion do not contest this fact either.

Additionally, Plaintiff requested reasonable accommodation via a lateral transfer/downgrade because he felt discriminated against due to his disabilities and impairments by Defendant Stoner and her constant criticism, nitpicking, and condemnation of Plaintiff (ECF 4, at ¶¶ 118 - 119, 125 – 127). Instead of looking for "gotcha" moments and scrutinizing every action or inaction of Plaintiff, Defendant Stoner could have accommodated his disabilities. The

ultimate denial of Plaintiff's request for reasonable accommodations came when Defendant

McGinnis wrongfully terminated him due to his disabilities and impairments. Defendants'

motion and memorandum in support of the motion do not contest this fact.

As ruled in *Mendillo v. Prudential Ins. Co. of America*, 156 F. Supp. 3d 317 - Dist. Court,

D. Connecticut 2016, "The Second Circuit has held that 'an employee's request for an

accommodation triggers a duty on the part of the employer to investigate that request and

determine its feasibility.'" *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir.2006)

(internal quotation marks and citation omitted). *Mendillo* further goes on that, "An employee

"'need not mention the ADA or even the term "accommodation"' so long as the employer has

knowledge of the disability." Id. (quoting *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 997 (D.Or.

1994)); see also *Medlin v. Rome Strip Steel Co.*, 294 F.Supp.2d 279, 292 (N.D.N.Y.2003) (noting

that "so long as the employee makes the employer aware of his condition and that some

accommodation is requested, the employer has at least some responsibility to reasonably engage

in the interactive process and determine the appropriate accommodation").

*Mendillo* continues with "The law in the Second Circuit, however, recognizes that "an

employer has a duty reasonably to accommodate an employee's disability if the disability is

obvious — which is to say, if the employer knew or reasonably should have known that the

employee was disabled," whether or not the employee has requested an accommodation or even

acknowledges that she has a disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d

Cir.2008).

Plaintiff's disabilities and impairments were obvious to Defendants, so obvious that they

took the time to document them and write about them on his performance evaluations (ECF 4 at

10

¶¶ 75, 90, 104, 123, 132).  Defendant CHGE, more specifically Defendants Stoner and Tyler,

failed in their duty to reasonably accommodate Plaintiff's known disabilities and limitations.

### C. Defendants Would Not Have Discriminated Against Plaintiff in Compensation, Discharge, and Wrongful Termination But-For His Disabilities

At Plaintiff's termination meeting, Defendant McGinnis stated his termination was due to

"performance and consistency" (ECF 4 at ¶ 143).  Performance and consistency fall under major

life activities under the ADA ("major life activities include, but are not limited to, performing

manual tasks, seeing, hearing, sleeping, walking, standing, speaking, learning, reading,

concentrating, thinking, communicating, and working").  42 U.S.C. § 12102(2)(a).  According to

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)) "Failure to consider the

possibility of reasonable accommodation for such disabilities, if it leads to discharge for

performance inadequacies resulting from the disabilities, amounts to a discharge solely because

of the disabilities".

In addition, according to *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d

Cir.2000) "To establish a prima facie case of discriminatory discharge under the ADA, an

employee bears the burden of demonstrating that: 1) he was an "individual who has a disability"

within the meaning of the statute; 2) the employer had notice of his disability; 3) he could

perform the essential functions of the job with reasonable accommodation; and 4) the employer

refused to make such accommodation. See *Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97

(2d Cir.1997), cert. denied, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

Plaintiff has demonstrated the first three elements of discriminatory discharge: he was an

individual with a disability, the Defendant employer had notice of his disability, and he could

perform the essential functions of his job.  All that remains is the fourth prong.  According to

*Goonan v. Fed. Reserve Bank of N.Y.*, 916 F.Supp.2d 470, 480 (S.D.N.Y.2013), "the Second

Circuit has "ruled that failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge 'because of his disability." See *Parker* (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir.1998)).

In *Glaser v. Gap Inc.*, 994 F.Supp.2d 569, 572-73 (S.D.N.Y.2014), the "defendants' contention that Glaser cannot show his discharge was "because of" his disability, and thus cannot establish a prima facie case under the ADA, lacks merit. Under the ADA, an employer need not know the exact diagnosis to be liable for discrimination on the basis of a disability; liability may be premised on the employer's perception, regardless of whether it is accurate, if the employer relies on such perception to engage in a prohibited act. See 42 U.S.C. § 12102(1)(C); 29 C.F.R. 1630.2(g)(3) & (P); see also Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir.2008) (holding that the evidence supported the jury's finding that the ADA plaintiff was regarded as disabled by his supervisor, who herself testified that "she 'knew there was something wrong' with him" and to whom was attributed the statement that the plaintiff "wasn't fit for the job").

Here, Defendant Stoner's perception that Plaintiff was disabled and had impairments with thinking, focus, and critical thinking were relied on to engage in the unlawful prohibited act of failing to accommodate. Further, Defendant McGinnis relied on Stoner's written assessments of Plaintiff in her unlawful prohibited act of wrongful termination. In that light, Stoner's discriminatory motive may be imputed to McGinnis as the final decision-maker since McGinnis' adverse employment action against Plaintiff was proximately caused by subordinate Stoner who had a discriminatory motive and intended to bring about the adverse employment action, otherwise known as the Cat's Paw theory of liability (see *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir. 2019)).

Furthermore, as noted in *Gonsalves v. J.F. Fredericks Tool Co., Inc.*, 964 F. Supp. 616,

621 (D. Conn. 1997), "plaintiff argues that the job duties of gauge technician were unrealistically

high and impossible for one person to handle. The affidavits of Orschel and Pelletier support this

contention. *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir.1987) (unreasonable expectations of

employer present strong evidence that employee was discharged on the account of handicap)".

Similarly, Plaintiff in this case highlighted the unreasonable expectations of Defendants Tyler

and Stoner that were endorsed by Defendants Dittmann, Haering, and Sammon, which were

ultimately relied on by Defendant McGinnis in her wrongful termination action (ECF 4 at ¶¶ 57

– 61, 72, 82, 96, 124 – 125).

## III.    PLAINTIFF HAS SUFFICIENTLY ALLEGED NEW YORK COMMON LAW DERIVATIVE CLAIMS

Having rebutted Defendants' argument that "Without Underlying Disability Claims,

Plaintiff's Derivative New York Claims Fail", Plaintiff's aiding-and-abetting, civil conspiracy,

and "Prima Facie Tort" claims are all still germane and *ad rem* (Def. Mem. 16).

### A.    Individual Defendants Are Liable For Aiding And Abetting Unlawful Employment Practices Under The New York Executive Law

According to *Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999), "the Second

Circuit has also imposed individual liability under its interpretation of N.Y.EXEC.LAW §

296(6), which states that "it shall be unlawful discriminatory practice for any person to aid, abet,

incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do

so." N.Y.EXEC.LAW § 296(6). In *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995), the

court distinguished Patrowich, and held that individuals may be liable, under § 296(6), even

without an ownership interest or the authority to hire and fire, if they actually participated in the

discrimination.[3] See Tomka, 66 F.3d at 1317. Thus, the court denied a motion to dismiss when

the plaintiff alleged that each defendant participated in the discrimination and created a hostile work environment. See id."

Additionally, in *DeWitt v. Lieberman*, No. 97 Civ. 4651, 1999 WL 13236 *12 (S.D.N.Y. Jan.13, 1999), "The court held that under New York law, an "employer cannot be held liable for an employee's discriminatory act unless the employer became party to it by encouraging, condoning, or approving it."

Here, Defendant Stoner actually participated in the conduct giving rise to the discrimination because she was Plaintiff's primary supervisor, authored his performance reviews, observed firsthand his impairments, and failed to provide reasonable accommodations.

Defendant Tyler actually participated in the conduct giving rise to the discrimination by ratifying and approving Stoner's unlawful actions (ECF 4 at ¶¶ 71, 81, 94).

Defendants Dittmann, Haering, and Sammon actually participated in the conduct giving rise to the discrimination by ratifying and approving Stoner's unlawful actions (ECF 4 at ¶¶ 71, 81, 94).

Defendant McGinniss actually participated in the conduct giving rise to the discrimination by ratifying and approving Stoner's unlawful actions, made the decision not to allow Plaintiff a transfer and provide reasonable accommodations, and ultimately unlawfully terminated him (ECF 4 at ¶¶ 143 – 144).

## B.    Defendants Committed Civil Conspiracy

Plaintiff has established a claim of civil conspiracy by demonstrating the primary torts of discrimination, plus the necessary four elements: (1.) an agreement between two or more parties, (2.) an overt act in furtherance of the agreement, (3.) the parties' intentional participation in the furtherance of a plan or purpose, and (4.) resulting damage or injury.

14

According to *Fairstein v Netflix, Inc.*, 553 F Supp 3d 48, 57-58 (SDNY 2021), "New York law does, in fact, recognize a claim of civil conspiracy where a plaintiff adequately alleges an underlying tort. See, e.g., *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."). "In order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." (ECF 4 at ¶¶ 215 – 221).

### C.    Defendants Are Liable For Quantum Meruit

Plaintiff has established a claim of quantum meruit by demonstrating the necessary four elements: (1.) the performance of services in good faith, (2.) the acceptance of the services by the person to whom they are rendered, (3.) an expectation of compensation therefor, and (4.) the reasonable value of the services.

As stated in *Tarquino V. Muse Enterprises, Inc.*, No. 19 Civ. 3434 (AT), Dist. Court, (SDNY 2020), "The purpose of the quantum meruit doctrine is 'to make sure that a person who receives the benefit of services pays the reasonable value of such services to the person who performed them.'" *Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29, 32 (2d Cir. 2018) (quoting *Zolotar v. New York Life Ins. Co.*, 576 N.Y.S.2d 850, 854 (App. Div. 1991)).". (ECF 4 at ¶¶ 222 – 226).

### D.    Defendants Are Liable For Prima Facie Tort

Plaintiff has established a claim of prima facie tort by demonstrating the necessary four elements: (1.) the intentional infliction of harm, (2.) which results in special damages, (3.)

without any excuse or justification, and (4.) by an act or series of acts which would otherwise be lawful.

The general principle behind this tort is that "harm intentionally inflicted is prima facie actionable unless justified. See *Delgado v. Donald J. Trump For President, Inc.*, No. 19 Civ. 11764 (AT), Dist. Court, (S.D.N.Y. Mar 14, 2022) quoting *Curiano v. Suozzi,* 63 N.Y.2d 113, 117 (1984). (ECF 4 at ¶¶ 227 – 232).

## IV.    COMPLAINT DOES NOT CONTAIN THRESHOLD PRECLUSIONS

### A.    Federal Claims Against the Individual Defendants

The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person. (ECF 4 at ¶¶ 29). 42 U.S.C. § 12111(5)(a).

Since Defendants McGinnis, Sammon, Tyler, Stoner, Haering, and Dittmann meet the definition of employer, each has individual liability and is prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment". 42 U.S.C. § 12112(a).

### B.    CHGE Receives Federal Assistance

Despite Defendants' misrepresentations, Defendant CHGE does in fact receive federal assistance.  Defendants' use of 29 U.S. Code § 794(a), which states, "No otherwise qualified

16

individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." is inapposite.

Defendant CHGE's website (www.cenhud.com) and annual reports clearly show multiple ways in which it receives federal assistance:

- "Central Hudson continues to proactively contact customers regarding past due balances and to advise them of financial assistance programs available and is also working with local agencies and municipalities to obtain funding for its customers through **federal and state programs**".[2]
- "No further increase to the reserve has been recorded at December 31, 2021 based on the potential **available funding from federal and state programs** to assist customers financially impacted by COVID-19 pay off their utility arrears balances".[3]
- "HEAP is a **federally funded program** that helps customers with low-income pay heating and cooling costs for electricity, gas and other heating fuels".[4]

### C. Defendants' Continuing Violations of Discriminatory Compensation

Defendants claim Plaintiff's discriminatory compensation claims are time-barred, but case law shows this is a flawed argument. According to the Court in *Solomon v. County of Nassau*, No. CV 20-5227 (AYS), Dist. Court, (E.D.N.Y. Dec 1, 2021), "For statute of limitations purposes, incidents of employment discrimination must be categorized as either discrete acts or continuing violations. *Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005). A continuing violation may be found "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."

---

[2] https://www.chenergygroup.com/financialinformation/CHEnergyGroup_2022_Q4.pdf
[3] https://www.chenergygroup.com/financialinformation/CHEnergyGroup_2021_Q4.pdf
[4] https://www.cenhud.com/en/account-resources/assistance-programs/heap/

The *Fleming* Court stated, "If a plaintiff establishes that one contributing act occurred within the applicable limitations period, all acts contributing to that violation may be timely challenged in the plaintiff's discrimination claim, even those occurring outside of the statutory period. *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)."

## CONCLUSION

Plaintiff believes there are undoubtedly many more documents, correspondence, and communications proving Defendants were aware of his disabilities, limitations, and impairments but has not yet had the opportunity to discover those. Once disclosures and discovery commence, Plaintiff anticipates those files would be revealed. In consideration of the preceding reasons, and in light of the factual issues that are in dispute between the parties, Plaintiff respectfully requests that the Defendants' Motion to Dismiss be denied in its entirety.

In the alternative, Plaintiff requests leave to amend any matters in the Amended Complaint that the Court might view as lacking.

Dated: Pleasant Valley, NY
April __5__, 2023

Respectfully Submitted,
By:
   /s/ James W. Rhoda, Jr.

James W. Rhoda, Jr.
Plaintiff *Pro Se*
503 Rossway Road
Pleasant Valley, NY 12569
Telephone: 301-351-6881
Facsimile: 845-209-2123
Email: foneman401@gmail.com

James W. Rhoda, Jr. v. Central Hudson Gas & Electric Corp., et al.
S.D.N.Y. Case No. 7:22-cv-08135-NSR

***James W. Rhoda, Jr.***
*503 Rossway Road*
*Pleasant Valley, NY 12569*
*(301) 351-6881 cell*
*foneman401@gmail.com*

April 5, 2023

Honorable Nelson S. Román
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

**Pro Se Intake Unit**

Re:    James W. Rhoda, Jr. v. Central Hudson Gas & Electric Corp., et al.
S.D.N.Y. Case No. 7:22-cv-08135-NSR

Dear Judge Román,

      Pursuant to the Court's briefing schedule dated February 3, 2023, please find enclosed two courtesy copies of PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS.  An electronic version has been served on Defendants.

      Thank you in advance for your consideration with this matter.

Sincerely,

/s/ James W. Rhoda, Jr.

James W. Rhoda, Jr.
Plaintiff *pro se*

Cc:    Joseph B. Koczko, Counsel for Defendants (via email joseph.koczko@thompsonhine.com)

**Extremely Urgent**



Visit **UPS.com**

**Apply shipping documer**

**Scan QR code to schedule a pickup**

**Domestic Shipments**
- To qualify for the letter rate, UPS Express® envelopes may only co correspondence, urgent documents, and/or electronic media, and 8 oz. or less. UPS Express envelopes containing items other than t or weighing more than 8 oz. will be billed by weight.

**International Shipments**
- The UPS Express envelope may be used only for documents of n value. Certian countries consider electronic media as documents. ups.com/importexport to verify if your shipment is classified as a

- To qualify for the letter rate, the UPS Express envelope must weig UPS express envelopes weighing more than 8 oz. will be billed by

**Note:** UPS Express envelopes are not recommended for shipment electronic media containing sensitive personal information or brea Do not send cash or cash equivalent.

n the following services: **UPS Next Day Air®**

**UPS Worldwide Express®**

**UPS 2nd Day Air®**

**UPS Worldwide Expedited®**

ot use this envelope for: **UPS Ground**

**UPS Standard**

**UPS 3 Day Select®**

RHODA
(301) 351-6081
503 ROSSWAY WAY RD
PLEASANT VALLEY NY 12569

0.6 LBS LTR 1 OF 1
SHP WT: 1 LBS
DATE: 06 APR 2023

SHIP PRO SE INTAKE UNIT
TO: US DIST COURT
300 QUARROPAS ST
APR D 7 2023

WHITE PLAINS NY 10601-4140

NY 106 9-05

UPS NEXT DAY AIR                    1
TRACKING #: 1Z 120 X85 01 2395 2042



BILLING: P/P

ISH 19.00F ZIP 450 11.0V 03/2023

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.





Serving you for more than 110 years
United Parcel Service.®

**For information about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com**

010195101  9/20  PAC  United Parcel Service

80% Post-Consumer Content