USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES W. RHODA, JR,

                        Plaintiff,

-against-

CENTRAL HUDSON GAS & ELECTRIC
CORP., et al,

                        Defendants.

No. 22 Civ. 8135 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff James W. Rhoda, Jr. ("Plaintiff"), a former employee of Central Hudson Gas & Electric ("CHGE"), brings this action against CHGE, Sharon McGinnis, Jill Sammon, Erica Tyler, Tera Stoner, Paul Haerin, David Dittmann, and ten John-and/or-Jane Does (the "Individual Defendants", and together with CHGE, the "Defendants") alleging that his former employer discriminated against him by engaging in adverse employment activity under a number of federal and state law bases. To wit, Plaintiff asserts claims sounding under: (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, including (a) failure to provide reasonable accommodation, (b) discriminatory compensation, (c) denying employment opportunities, (d) discriminatory use of qualification standards and selection criteria, and (e) discriminatory discharge and termination; (2) the Rehabilitation Act of 1973 (the "Rehabilitation Act") under Sections 503 and 504, 29 U.S.C. §§ 793 & 794, respectively, including (a) failure to provide reasonable accommodation, (b) failure to take affirmative action, (c) discriminatory compensation under, and (d) discriminatory discharge; (3) New York State Human Rights Laws ("NYSHRL"), N.Y. Exec. Law §§ 290 to 297, including (a) denial of equality of opportunity, (b) failure to provide reasonable accommodation, (c) discriminatory compensation, (d) discriminatory

terms, conditions, or privileges, (e) discriminatory discharge from employment; (4) aiding and abetting under New York State Executive Law § 296(6); (5) state law civil conspiracy; (6) *quantum meruit*; and (7) *prima facie* tort.

Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint. For the following reasons, the Court GRANTS Defendants' motion to dismiss and further GRANTS Plaintiff leave to amend.

## BACKGROUND

### I. Factual Allegations

The following facts are drawn from Plaintiff's Amended Complaint (ECF No. 4) and are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a special disabled veteran suffering from the following impairments: (1) tendinitis; (2) bursitis post-total hip arthroplasty; (3) lumbosacral strain/altered gait related to hip arthroplasty, (4) adjustment disorder with mixed anxiety and depressed mood; (5) cognitive impairment; (6) coronary artery disease/coronary artery atherosclerosis ("CAD/CAA"); (7) hypertension; (8) obstructive sleep apnea ("OSA"); (9) gastro-esophageal reflux disease ("GERD"); (10) hyperlipidemia; and (11) tinnitus. (Amend. Compl. ¶¶ 32-33). These impairments cause substantial limitations of major life activities, including, among others, hearing, eating, sleeping, walking, standing, sitting, learning, concentrating, interacting with others, communicating, executive functioning, and the operations of brain and other neurological functions. (*Id*. ¶ 34).

In January 2016, Plaintiff began contract work for the Defendants as a Telecommunication System Designer. (*Id*. ¶ 44). In June 2016, Plaintiff was hired as a full-time Senior Telecommunications Systems Designer. (*Id*. ¶ 45). From June through December 2016, Plaintiff

received evaluations of "effective" and "highly effective" from supervisors in his annual review, and received a raise based off his performance. (*Id*. ¶¶ 50-51).

In May 2017, Plaintiff's "requirements and expectations list" was increased from eight to 20 items. (*Id*. ¶ 57). In part from this increase of responsibility, Plaintiff was diagnosed with anxiety and hypertension. (*Id*. ¶ 61). In September 2017, Plaintiff was further diagnosed with OSA and prescribed a continuous positive airway pressure machine to help alleviate his symptoms. (*Id*. ¶ 63). OSA contributes to deficits in an individual's attention, verbal and visual delayed long-term memory, visuospatial/constructional abilities, and executive function. (*Id*. ¶ 66). For his annual review, Plaintiff received evaluations of "partially meets expectations" and "effective" across various areas of performance. (*Id*. ¶¶ 68-69). Plaintiff again received a raise based on his performance, though in smaller percentage than in 2016. (*Id*. ¶ 70). Further, he was expected to achieve ratings of "exceptional" going forward. (*Id*. ¶ 72).

In 2018, Plaintiff received critical comments and areas for improvement in his annual review. (*Id*. ¶ 75). Plaintiff states that Defendants Tyler, Stoner, Dittmann, Hearing, and Sammon were all aware of his OSA diagnosis at this point. (*Id*. ¶¶ 76-77). In particular, Defendants Tyler and Stoner were aware of Plaintiff's episodic memory loss, working memory deficiencies, and other executive impairments. (*Id*. ¶ 76). Plaintiff received ratings of "partially meets expectations", "effective", and "highly effective" on his 2018 annual review, and again received a pay increase. (*Id*. ¶¶ 78-80). Plaintiff was again expected to achieve ratings of "exceptional" going forward.

Plaintiff claims that, following an office remodel in 2019, he answered affirmatively when employees were offered standing desks, only to later be denied despite subsequent requests. (*Id*. ¶¶ 85-89). Moreover, Plaintiff's 2019 annual review contained critical comments and areas for improvement, and, despite his struggles, Plaintiff's workload was increased by his superiors—

3

including more difficult and complex tasks. (*Id*. ¶¶ 90-91). Plaintiff again received ratings of "partially meets expectations", "effective", and "highly effective", and again received a pay increase after in his 2019 annual review. (*Id*. ¶¶ 92-94).

In January 2020, Plaintiff was diagnosed with CAD/CAA secondary to hyperlipidemia and was prescribed Atorvastatin for the former. (*Id*. ¶¶ 98-99). Atorvastatin "is a leading statin associated with dementia or cognitive impairment." (*Id*. ¶ 100). That May, Plaintiff was also diagnosed with GERD and was prescribed Omeprazole. (*Id*. ¶ 101). Omeprazole has deleterious effects on cognitive function, including deterioration of visual and episodic memory, new learning, motor and mental response speed, attention, retention, and strategy development. (*Id*. ¶ 102). Even so, and despite continued critical comments in the report, Plaintiff continued to receive "partially meets expectations", "effective", and "highly effective" in his 2020 annual review. (*Id*. ¶¶ 106-07).

Plaintiff was placed on a performance improvement plan in February 2021. (*Id*. ¶ 121). As part of that plan, Plaintiff received monthly updates in March, April, May, and June 2021,[1] which noted persistent forgetfulness on Plaintiff's part and extended amounts of time to complete tasks as compared to peers. (*Id*. ¶¶ 122-23, 140). In a May 2021 discussion of these reports, Plaintiff indicated that he "should be given extra time to complete [his tasks] without penalty . . . ." (*Id*. ¶¶ 124-25). Defendants did not agree or offer to give additional time to complete his tasks. (*Id*. ¶ 126)

In June 2021, Plaintiff indicated he would accept a transfer to a new position if doing so would solidify his continued employment. (*Id*. ¶ 132). His request was passed on to human resources for review. (*Id*. ¶¶ 133-35). In July 2021, Plaintiff had an internal interview for a different

---

[1] Plaintiff's Amended Complaint states these updates were given in 2020. (Amend. Compl. ¶ 122). The Court believes this to be a clerical error.

position and was subsequently told that a second interview was scheduled for August 3, 2021. (*Id*. ¶¶ 136-38).

On August 2, 2021, Plaintiff was terminated by CHGE based on the "level of performance and consistency over the past couple of years . . ." and was offered a separation agreement. (*Id*. ¶¶ 141-43) (internal quotations omitted). With respect to his interview scheduled for the next day, Plaintiff was told that CHGE had "performance concerns that . . . could carry into that role" and that, given the role was "significantly below" Plaintiff's current position, that such a downward move "did not make sense". (*Id*. ¶ 144) (internal quotations omitted).

Plaintiff filed a Charge of Discrimination with the EEOC on May 23, 202 and received a Notice of Right to Sue on July 27, 2022. (*Id*. ¶¶ 13-14). Plaintiff then commenced this action September 23, 2022. (*See* ECF No. 1).

## II.     Procedural History

Plaintiff initiated this action on September 23, 2022. (ECF No. 1). Plaintiff filed an Amended Complaint on December 8, 2022. (ECF No. 4). This Court entered a Stipulation and Order extending the Defendants time to respond to the Amended Complaint until January 20, 2023 on January 3, 2023. (ECF No. 7). With the Court's leave, Defendants filed their Motion to Dismiss the Amended Complaint on April 20, 2023. (ECF No. 16). Defendants filed a Memorandum of Law in Support ("Defs. Mem") of their motion. (ECF No. 17). Plaintiff opposed ("Pl. Opp.") (ECF No. 18) and Defendants replied. (ECF No. 19).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual

allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678.

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

Finally, it is axiomatic in this Circuit that *pro se* litigants receive "special solicitude" when construing their pleadings. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006).

## DISCUSSION

Plaintiff asserts claims under: (1) the ADA including (a) failure to provide reasonable accommodation, (b) discriminatory compensation, (c) denying employment opportunities, (d) discriminatory use of qualification standards and selection criteria, and (e) discriminatory discharge and termination; (2) the Rehabilitation Act, including (a) failure to provide reasonable accommodation, (b) failure to take affirmative action, (c) discriminatory compensation under, and (d) discriminatory discharge; (3) NYSHRL, including (a) denial of equality of opportunity, (b) failure to provide reasonable accommodation, (c) discriminatory compensation, (d) discriminatory terms, conditions, or privileges, and (e) discriminatory discharge from employment; (4) aiding and abetting under New York State Executive Law § 296(6); (5) state law civil conspiracy; (6) *quantum*

*meruit*; and (7) *prima facie* tort. The Defendants have moved to dismiss the Plaintiff's Amended Complaint in its entirety. (ECF No. 16).

## I. Threshold Issues

At the outset, the Court finds it prudent to dispose of certain threshold issues with respect to Plaintiff's causes of action.

### A. The Claims Against the Individual Defendants Under the ADA and Rehabilitation Act

Plaintiff's first through fifth causes of action are premised on the ADA, while his sixth through thirteenth causes of action are brought under the Rehabilitation Act. (Amend. Compl. ¶¶ 154-194). They are also lodged against all of the Defendants, including, pertinently, the Individual Defendants.

There is no individual liability under the ADA. *See, e.g., Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (holding 42 U.S.C. § 12203 of the ADA, like the remedial provisions under Title VII of the ADA, does not provide for individual liability); *Green v. City of New York*, 465 F.3d 65, 76 (2d Cir. 2006) (dismissing an ADA claim against an individual while noting "plaintiffs tacitly concede, . . . the principal actor in this case [] is not a proper defendant because he is an individual, not a public entity."); *Flum v. Department of Educ. Of the City of New York*, 83 F. Supp.3d 494, 500 (S.D.N.Y. 2015) ("Moreover, because there is no individual liability under the ADA . . . the Court dismisses all claims against [an individual defendant]."); *Mabry v. Neighborhood Defender Service*, 769 F. Supp.2d 381, 391 (S.D.N.Y. 2011) ("[T]he ADA does not provide for personal liability on the part of non-employer individuals, except in the case of claims under Title II of the ADA asserted against individuals in their official capacity for prospective injunctive relief.").

Similarly, there is no individual liability under the Rehabilitation Act. *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Noting that Section 504 of the Rehabilitation Act does not provide for individual capacity suits); *Flum*, 83 F. Supp.3d 494, 500 (S.D.N.Y. 2015) ("Moreover, because there is no individual liability under the . . . Rehabilitation Act, . . . the Court dismisses all claims against [an individual defendant]."); *Maus v. Wappingers Cent. School Dist.*, 688 F. Supp.2d 282, 302, n.10 (S.D.N.Y. 2010) (dismissing claims against on "ground that individuals cannot 'be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities.'" (quoting *Sutherland v. N.Y. State Dep't of Law*, No. 96 Civ. 6935 (JFK), 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999)).

Accordingly, the Individual Defendants are dismissed from causes of action one through thirteen.

**B. The Rehabilitation Act Claims**

Plaintiff's causes of action six through thirteen assert claims under either Sections 503 or 504 of the Rehabilitation Act. Section 503, however, does not provide a private right of action. *See, e.g., Davis v. United Air Lines, Inc.*, 662 F.2d 120, 127 (2d Cir. 1981); *see also, Burke v. Niagra Mohawk Power Corp.*, 142 Fed. App'x 527, 528 (2d Cir. 2005) (affirming a District Court's dismissal of a claim brough under Section 503 for lack of a private right of action) (summary order); *Hoffman v. City College of New York*, 20 Civ. 1729 (PGG), 2021 WL 1226498, at *7 (S.D.N.Y. March 30, 2021).

Further, Section 504 prohibits discrimination against any qualified individual with a disability by, pertinently, "any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Plaintiff notes as much in his Amended Complaint. (Amend. Compl. ¶ 4). Plaintiff fails, however, to affirmatively assert CHGE receives federal financial assistance. Even with the

8

"special solicitude" afforded the a *pro se* plaintiff's , *Triestman*, 470 F.3d at 475, there is no basis for the Court to construe that Plaintiff's Amended Complaint sufficiently states CHGE receives federal financial assistance within the meaning of the Rehabilitation Act.[2]

Accordingly, and for the foregoing reasons, the Plaintiff's Rehabilitation Act claims in causes of action six through thirteen are dismissed in their entirety.

## II. ADA Claims

The Court will now consider the Plaintiff's ADA claims against CHGE.

### A. The ADA's Charge of Discrimination Requirement

The ADA requires claimants file a charge of discrimination or retaliation with the United States Equal Employment Opportunity Commission ("EEOC") within a certain timeframe and looks to 42 U.S.C. § 2000e-5 ("Section 2000e-5") to set forth that timeframe and relevant procedures. *See* 42 U.S.C. § 12117(a). Section 2000e-5 provides claimants two timelines: (1) they must file the charge within 180 days of when the alleged unlawful employment practice occurred and serve the charge on the offending person within ten days of thereafter or (2) in the instance where a claimant "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receive notice thereof," a claimant must file the charge within the earlier 300 days of when the alleged unlawful employment practice occurred or within thirty days after receiving notice from the State authority that it has terminated the proceedings. 42 U.S.C. § 2000e-5(e). When a New York resident files a charge of discrimination with the EEOC, it is deemed, as a matter of law, to have actually been initially filed with the New York State Department of Human Rights, thus triggering the 300-day window. *See Torrico v. International Business Machines Corp.*, 319

---

[2] Defendants also claim that CHGE's status as a public entity categorically precludes the possibility of it receiving federal financial assistance. (*See* Defs.' Mem. p.12).

F. Supp.2d 390, 400-403 (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999)).

When, exactly, an alleged unlawful employment practice occurs can, in certain instances, present some measure of difficulty. Earlier conduct will be considered as a part of a "continuing violation" in instances where a plaintiff can show that the discriminatory acts were a part of ongoing, continuous policy and practice of prohibited discrimination. *Valtchev v. City of New York*, 400 Fed. App'x 586, 587 (2d Cir. 2010) (summary order). Discrete acts, including termination and failure to promote, are easier to identify. *Id*. In either case, if not filed timely, the claim is barred. *Id*.

Here, Defendants argue that Plaintiff's second cause of action alleging discriminatory compensation for failure to provide an annual raise is time-barred because Plaintiff failed to file a charge of discrimination within 300 days of CHGE's decision not to give Plaintiff a raise. (Defs. Mem., p.12).[3] Plaintiff claims that he did not receive a performance-based pay increase for his efforts in 2020 only. (Amend. Compl. ¶¶ 108, 124-26). Plaintiff fails to indicate when performance-based increases go into effect, but common sense dictates such an increase would occur early in 2021. As such, that discrete decision would fall well outside even the 300-day window for Plaintiff to file a Charge of Discrimination with the EEOC. Consequently, Plaintiff's second cause of action is time-barred and dismissed from this action.

### B. The Existence of a "Disability" Within the Meaning of the ADA

Turning to a substantive threshold, a plaintiff must adequately plead the existence of a "disability" within the meaning of the ADA. A disability is "a physical or mental impairment that

---

[3] Defendants mistakenly cite to a section of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, for this proposition. While inapplicable, 29 U.S.C. § 626(d) nevertheless sets out substantively similar timing requirements as 42 U.S.C. § 2000e-5. *Compare* 42 U.S.C. § 2000e-5(e) *with* 29 U.S.C. § 626(d).

substantially limits one or more major life activities . . ." of an individual. 42 U.S.C. § 12102(1)(A). Courts perform a three-step analysis to determine whether a claimant has sufficiently stated a "disability" under the ADA and consider whether: (1) the claimant suffered from a physical or mental impairment; (2) the life activity upon which the plaintiff relied amounts to a major life activity under the ADA, and (3) the impairment substantially limited that major life activity as identified by the claimant. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (citing *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998)). In other words, not every impairment is a disability under the ADA. *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). The impairment must: (1) limit a major life activity and (2) that limitation must be substantial. *Id*.

A "major life activity" is one that is "of central importance to daily life, including functions such as caring for oneself, walking, seeing, hearing, speaking, breathing, learning and working. *Primmer v. CBS Studios, Inc.*, 667 F. Supp.2d 248, 258 (S.D.N.Y. 2009). A "substantial limitation" on a major life activity[4] is one that "significantly restrict[s] the condition, manner or duration under which [the individual] can perform . . ." the activity. *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014); *see also* 29 C.F.R. § 1630.2(j)(1)(ii) (1991). The "substantial limitation" standard is "not meant to be . . . demanding", and the major life activity need not be "significantly or severely restrict[ed]" to nevertheless be substantially limited. 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

Given the reasons discussed below for dispensing with Plaintiff's claims, the Court will assume, *arguendo*, that Plaintiff has a "disability" within the meaning of the ADA. If Plaintiff

---

[4] The ADA also defines "major life activity" as including, but not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A).

submits a second amended complaint, however, the Court may then perform a "disability" analysis if necessary.

### C. Plaintiff's Reasonable Accommodation Claims

Plaintiff's ADA claims found in his first and third causes of action allege: (1) failure to provide reasonable accommodation and (2) denial of employment opportunities, respectively. (Amend. Compl. ¶¶ 119-23, 127-29). The ADA prohibits employers from "not making reasonable accommodations to the known . . ." disabilities of an individual "unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" 42 U.S.C. § 12112(b)(5)(A). Moreover, employers may not "deny[] employment opportunity to [an] employee who is an otherwise qualified individual with a disability, if such denial is based on the need of [the employer] to make reasonable accommodation . . ." for that employee's disability. 42 U.S.C. § 12112(b)(5)(B).

To establish a *prima facie* case of discrimination for failure to accommodate under the ADA, a plaintiff must show that: (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the ADA had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer had refused to make such accommodations. *Natofsky v. City of New York*, 921 F.3d 337, 351 (2d Cir. 2019) (citing *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (cleaned up).

Pertinent here is the second factor: The obligation to provide reasonable accommodation only arises when an employer knew or reasonably should have known that the employee was disabled. *See Costabile v. New York City Health and Hospitals Corp.*, 951 F.3d 77, 82 (2d Cir.

2020)[5] (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)). Individuals with a disability, generally, bear the responsibility to inform employers of their need for an accommodation. *Id*. (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006). However, employers may not avoid this obligation when the disability is obvious or the employer otherwise had sufficient notice that it should have known of the disability. *Id*.

Defendants argue that "Plaintiff never disclosed any of his [alleged disabilities.]" (Defs. Mem. p.13) (emphasis in original). Not so: Plaintiff states that in a follow-up conversation to his request for a standing desk with Individual Defendant Tyler,[6] he indicated that the standing desk would "alleviate the excessive sleepiness he experiences and how sleepy he feels during the day from his OSA[,]" and would also help to alleviate the "pain and stiffness of his tendinitis/bursitis." (Amend. Compl. ¶ 67). Such a conversation with a superior is sufficient to put CHGE on notice of Plaintiff's disabilities with respect to OSA and tendinitis/bursitis.

Plaintiff fails to make the requisite showing of knowledge, though, regarding his other disabilities: post-total hip arthroplasty; lumbosacral strain/altered gait; adjustment disorder with mixed anxiety and depressed mood; adjustment disorder with mixed anxiety and depressed mood, cognitive impairment, cognitive impairment, CAD/CAA, hypertension, GERD, hyperlipidemia, and tinnitus. (*See Id*. ¶ 32). Plaintiff points to entries in his annual performance reviews noting his difficulties in performing certain tasks and need for reminders as evidence that CHGE was aware of his myriad other disabilities. (*See, e.g.,* Amend. Compl. ¶¶ 75-77, 90-91, 104-05, 115-17). An employee's struggles do not, in and of themselves, make it obvious to an employer that the

---

[5] Though *Costabile* involves accommodation claims raised under the Rehabilitation Act, the standards are the same when analyzing a claim under the ADA. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (stating that, unless the "subtle distinctions" between the ADA and Rehabilitation Act are pertinent to a particular case, the analysis under the two statutes is identical).
[6] Individual Defendant Tyler was employed at all relevant times as "Director Operational Technology" by CHGE. (Amend. Compl. ¶ 24).

employee in question is suffering from a disability. Plaintiff could have also alerted CHGE at any point after one of the relevant performance reviews that he was suffering from his disabilities, but did not. Thus, CHGE's obligation to provide reasonable accommodation only applied with respect to Plaintiff's OSA and tendinitis/bursitis.

Turning now to third factor, Plaintiff's OSA and tendinitis/bursitis claims fail. Beginning with the latter, though the Court does not question that a standing desk would help alleviate Plaintiff's tendinitis/bursitis symptoms, those symptoms are irrelevant to areas where Plaintiff was noted as struggling in his performance reviews. To wit, those performance reviews consistently reference issues with memory. (*See* Amend. Compl. ¶¶ 77, 90, 104). These concerns were reiterated in the performance improvement plan he was placed on in February 2021. (*Id.* ¶ 123). The stiffness Plaintiff experiences from his bursitis/tendinitis is entirely disconnected from the memory issues plaguing Plaintiff's performance.

Similarly, though Plaintiff notes that OSA can cause daytime sleepiness and deleterious effects on memory (*See* Amend. Compl. ¶¶ 40-42), it is not clear that the standing desk would remedy those issues and allow plaintiff to perform the essential functions of his position. Indeed, Plaintiff affirmatively states that despite his OSA diagnosis, he *was* able to adequately perform the responsibilities attendant to his position without accommodation: Plaintiff was diagnosed with OSA in September 2017 and requested the standing desk in the first quarter of 2019. (*Id.* ¶¶ 63, 85-88). Nevertheless, Plaintiff states that in each of 2017, 2018, and 2019, he was able to "perform the essential functions of his position with or without reasonable accommodations for his disabilities." (*Id.* ¶¶ 73, 83, 97). It cannot be that the ADA compels employers to provide accommodations that, by a plaintiff's own admission, would have no bearing on their ability to perform the essential functions of their position.

For the foregoing reasons, then, Plaintiff's reasonable accommodation claims in his first and third causes of action are dismissed.

### D. Plaintiff's Discriminatory Qualification Standards and Selection Criteria Claim

Plaintiff's fourth cause of action alleges discriminatory use of qualification standards and selection criteria with respect to his request to move to a lateral position or "downgrade" to one with less strenuous responsibilities. (*Id*. ¶¶ 165-67). The ADA provides that employers may not deny employment opportunity on the basis of "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of disabilities unless . . ." the employer can show such screening procedures are "job-related for the position in question and is consistent with business necessity . . . ." 42 U.S.C. § 12112(b)(6).

To make out a claim, plaintiffs must show the "essential element" that the qualification standards "screen out or tend to screen out" the claimant or a class of disabled individuals. *Frilando v. New York City Transit Authority*, 463 F. Supp.3d 501, 518 (S.D.N.Y. 2020). A plaintiff may do so by showing a causal relationship between the qualification standard challenged and, in this instance, the failure to move Plaintiff to a lateral position or one with lesser responsibility. *Id*.

In June 2021, Plaintiff requested a transfer to a different department. (Amend. Compl. ¶ 132). He was later told that his request was under review by human resources, which would look "at past appraisals" to guide its decision. (*Id*. ¶¶ 133–35). Plaintiff also applied for a different position in May 2021 and interviewed for that position in July 2021, with that interview's purpose being to suss out whether Plaintiff was qualified for the role. (*Id*. ¶¶ 136-37). After that interview, a second was scheduled for August 2021. (*Id*. ¶ 138). Plaintiff, however, was terminated on August 2, 2021 based on his "level of performance and consistency" over the previous years. (*Id*. ¶¶ 141-43) (internal quotation marks omitted).

Plaintiff does not articulate what, exactly, qualification standards he objects to and that prevented his shift into a new role with CHGE. It would appear that CHGE's decision to terminate Plaintiff was based on his deteriorating performance as reflected in his annual performance reviews—and, most notably, his performance after being placed on a performance improvement plan in February 2021. (*Id*. ¶¶ 94-96, 100-01, 106-07). As the Court has already found that CHGE was either unaware of Plaintiff's disabilities or was not under an obligation to accommodate them, his performance was proper metric by which to decide whether Plaintiff's employment should continue or be terminated it. In other words, the allegations as asserted in the Amended Complaint fail to show a causal connection between his termination by CHGE and alleged disabilities. Plaintiff's fourth cause of action is therefore dismissed.

### E. Plaintiff's Discriminatory Discharge Claim

Plaintiff's final ADA claim alleges discriminatory discharge and termination. To make such a claim, claimants are required to make a *prima facie* showing that: (1) the claimant suffered from a disability; (2) the employer was aware of the disability; (3) the claimant could perform the essential functions of the job with a reasonable accommodation; and (4) the employer refused to make such an accommodation. *Best v. Duane Reade, Inc.*, 715 Fed. App'x 95, 96 (2d Cir. 2018) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000)) (summary order).

Much as with his reasonable accommodation claims, Plaintiff's discriminatory discharge claim fails on the grounds that he repeatedly asserts he was able to perform the essential functions of his position without reasonable accommodation. (Amend. Compl. ¶¶ 73, 83, 97). Again, the ADA does not require a reasonable accommodation where none is required to perform the essential functions of the position. Plaintiff's fifth cause of action is therefore dismissed.

**III.   Plaintiff's Remaining State Law Claims**

Plaintiff's remaining causes of action, his fourteenth through twenty-second, each allege violations of New York State law. (*See Id*. ¶¶ 195-232). Plaintiff properly plead jurisdiction with respect to these claims pursuant to 28 U.S.C. § 1367. *See* 28 U.S.C. § 1367; (*see also* Amend. Compl. ¶ 10).

A district court may, however, "decline to exercise supplemental jurisdiction over a claim [if it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). In this instance, the Court chooses to dismiss the state law claims without prejudice. The Court also GRANTS Plaintiff leave to further amend his complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss in its entirety. In particular and with respect to the Individual Defendants McGinnis, Sammon, Tyler, Stoner, Haering, Dittmann, and John-and/or-Jane Does 1-10, Plaintiff's first through thirteenth causes of action are dismissed with prejudice. Similarly, Plaintiff's sixth, eighth, tenth, and twelfth causes of action, premised upon Section 503 of the Rehabilitation Act, are dismissed with prejudice.

With respect to Plaintiff's claims against Central Hudson Gas & Electric, Plaintiff's first through fifth, seventh, ninth, eleventh, and thirteenth through twenty-second causes of action are dismissed without prejudice. Plaintiff is further GRANTED leave to file a further amended complaint on or before April 8, 2024.

The Clerk of Court is directed to terminate the motion at ECF No. 16.  The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at the address listed on ECF and to show proof of service on the docket.

| | |
|---|---|
| Dated: March 16, 2024<br>       White Plains, NY | SO ORDERED.<br><br>_____<br>NELSON S. ROMÁN<br>United States District Judge |