USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/30/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES W. RHODA, JR.,

                    Plaintiff,

         -against-

CENTRAL HUDSON GAS & ELECTRIC
CORP., et. al.,

                  Defendants.

7:22-cv-08135-NSR

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff James W. Rhoda, Jr. ("Plaintiff") commenced this action against his former employer, Defendant Central Hudson Gas & Electric Corp. ("CHGE"), and his former supervisors, Defendant Sharon McGinnis ("McGinnis"), Jill Sammon ("Sammon"), Erica Tyler ("Tyler"), Tera Stoner ("Stoner"), Paul Haering ("Haering"), David Dittmann ("Dittmann"), John and Jane Does 1-10 ("Does") (the "Individual Defendants," and together with CHGE, the "Defendants").[1] Plaintiff asserts multiple claims against the Defendants for alleged discriminatory conduct pursuant to, inter alia, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131, et seq. ("the ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §701, et seq. ("the RA"), and numerous New York State law claims including, but not limited to, violations of the New York State Human Rights Law ("the NYSHRL"). Currently, before this Court is Defendants' Motion to Dismiss the operative complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, Defendants' motion is GRANTED.

**PROCEDURAL HISTORY**

---

[1] Plaintiff purportedly commenced the action with assistance of a licensed attorney.

Plaintiff filed his original complaint on September 23, 2022 (ECF No. 1), asserting claims of discrimination based on alleged disabilities. On December 8, 2022, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 4.) By Opinion and Order, dated March 16, 2024 (the "March 2024 Order"), the Court dismissed with prejudice claims one through thirteen asserted under the ADA and RA as against the Individual Defendants (McGinnis, Sammon, Tyler, Stoner, Haering, Dittmann, and John-and/or-Jane Does 1-10), and claims, six, eight, ten and twelve asserted under Section 503 of the RA. (ECF No. 23.) Plaintiff's claims asserted under the ADA and RA 504 against CHGE, claims one through five, seven, nine, eleven, and thirteen through twenty-two, were dismissed without prejudice. (*Id*.) On May 8, 2024, Plaintiff filed a Second Amended Complaint ("SAC") (ECF No. 26.) The SAC, the operative complaint, asserts similar claims to those previously asserted in the FAC. On October 8, 2024, Defendants filed their Motion to Dismiss, Memorandum of Law in Support and Reply Memorandum of Law. (ECF Nos. 35, 37 and 39.) On October 8, 2024, Plaintiff filed his Memorandum of Law in Opposition. (ECF No. 38.) The motion was deemed fully submitted on October 8, 2024.

## BACKGROUND

Plaintiff commenced this action asserting multiple claims under the ADA and RA, along with various state law claims. The primary allegation giving rise to this action is that Plaintiff requested and was denied a reasonable accommodation by his former employer which ultimately culminated in his termination. (*See generally* SAC.) Plaintiff seeks monetary, declaratory and injunctive relief. (SAC at 41.) Plaintiff seeks compensatory damages for wrongful termination and injunctive relief, reinstatement to the position he held prior to his termination, and enjoinment of any future discrimination. (*Id.*)

## STATEMENT OF FACTS

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Defendant CHGE is a regulated transmission and distribution utility company which provides natural gas and electricity to customers in New York State's Mid-Hudson River Valley area. (SAC ¶ 21.) CGHE employs all individually named defendants. (*Id.* ¶¶ 25-31.) At all relevant times pled within the SAC, each and every named Defendant was an "employer." (*Id.* ¶ 32.)

On or about January 4, 2016, Plaintiff began working as a contractor for Defendants, employed by Ethan Allen Workforce Solutions as a Telecommunication System Designer. (*Id.* ¶ 51.) Prior to Defendant CHGE making a conditional job offer, Plaintiff obtained a pre-employment physical examination with a medical professional of Defendant CHGE's choosing. (*Id.* ¶ 53.) The physical examination revealed the following medical conditions: total hip replacement, prehypertension, and obesity. (*Id.*) On June 23, 2016, Defendant CHGE Human Resources Administrator, Gary Courtney, acknowledged receipt of Plaintiff's pre-employment medical examination report. (*Id.* ¶ 55.) Plaintiff was subsequently hired full time by Defendants on June 29, 2016, as a Senior Telecommunications Systems Designer. (*Id.* ¶ 58.)

Plaintiff reports living with additional ADA defined disabilities beyond those observed and communicated to the Defendants.[2] (*Id.* ¶ 56.) Plaintiff's self-disclosed disabilities include tendinitis, bursitis, total hip arthroplasty, lumbosacral strain/altered gait related to hip arthroplasty, adjustment disorder with mixed anxiety and depressed mood, cognitive impairment, coronary artery

---

[2] Plaintiff provides no specificity regarding who or which named Defendant he informed of his then existing disabilities.

disease/coronary artery atherosclerosis ("CAD/CAA"), hypertension, obstructive sleep apnea ("OSA"), gastro-esophageal reflux disease ("GERD"), hyperlipidemia, and tinnitus. (*Id.* ¶ 36.) Despite his purported disabilities, from June 29, 2016 through December 31, 2017, Plaintiff received ratings of "Effective" and "Highly Effective" for several areas of performance, including "Job Requirements" and "Expectations and Overall Performance." (*Id.* ¶ 63.) Plaintiff also received a rating of "Highly Effective" and "Exceptional" for several area of performance, including job performance, competency. (*Id.* ¶¶ 63, 67.) Plaintiff's 2016 performance evaluation was prepared by Schmid, Plaintiff's Supervisor/Project Leader, and approved by Defendants Dittmann, Haering and Sammon. (*Id.* ¶ 66.)

In May 2017, in an email from Defendant Tyler, Plaintiff's then supervisor, notified Plaintiff that his job requirements were being increased. (*Id.* ¶ 69.) Defendant Dittmann was copied on the email and made no objection to the increased work requirements. (*Id.* ¶ 70.) Following implementation of the increased work requirements, Plaintiff's health worsened, including having difficulty sleeping, anxiety and hypertension. (*Id.* ¶ 73.) In August of 2017, Erin Doane was appointed to serve as the new Supervisor/Project leader. (*Id.* ¶ 74.) In September 2017, Plaintiff was diagnosed with Moderate OSA and was prescribed a "Continuous Positive Airway Pressure (CPAP) machine". (*Id.* ¶ 75.) For the 2017 calendar year, Plaintiff received a rating of "Partially Meets Expectations" for "Job Requirements and Expectation and for Overall performance." (*Id.* ¶ 81.) This was the first evaluation wherein Plaintiff received a "Partially Meets Expectations" rating. (*Id.* ¶ 82.) Following his 2017 evaluation, Plaintiff received a 1.5% performance raise which took effect in April 2018. (*Id.* ¶ 84.) Despite having knowledge of Plaintiff's disability, at no time did the Defendants inquire whether he might need a reasonable accommodation. (*Id.* ¶ 82.)

In April 2018, Defendant Stoner was appointed as Plaintiff's Supervisor/Project leader (*Id*. ¶ 87.) In August 2018, Defendant Stoner tasked Plaintiff with training and overseeing approximately four new employees. (*Id*. ¶ 88.) In September 2018, Plaintiff informed Defendant Stoner of and attended a medical appointment related to his OSA disability. (Id. ¶ 89.) Plaintiff's 2018 Annual Performance Review prepared by Defendant Tyler and Stoner indicated, among other comments, Plaintiff "needs to be reminded of work orders that need closing, where material transfers are needed, when requested to insert a troubleshooting tip into a procedure and to maintain information in ECM completion dates, work order and material discrepancies." (*Id*. ¶ 90.) Plaintiff received a rating of "Partially Meets Expectations" for job requirements and expectations, "Effective" for several categories and overall performance, and "Highly Effective" across several categories. (*Id*. ¶¶ 94, 95.) Plaintiff's 2018 evaluation was approved by Defendants Dittmann, Haering, and Sammon. (*Id*. ¶ 93.) Based on his evaluation, Plaintiff received a 6.2% performance raise that went into effect in April 2019. (*Id*. ¶ 96.) Despite being aware of Plaintiff's work-related shortcomings and physical disabilities, which were discussed during his 2018 evaluation meeting, Plaintiff was not offered an accommodation by any of the Defendants, including Stoner. (*Id*. ¶ 91.)

In 2019, Plaintiff's workspace area was being remodeled. (*Id.* ¶ 100.) Defendant Tyler inquired via email if anyone was interested in a "standing desk" while the new office furniture was being purchased. (Id*. ¶ 101.) Plaintiff had a conversation with Defendant Tyler and requested a standing desk indicating that it would help alleviate the excessive daytime sleepiness he experiences, and that alternating between standing and sitting would also help alleviate the pain and stiffness he suffers due to his tendinitis/bursitis and lumbosacral strain from his hip replacement. (*Id*. ¶ 102.) Plaintiff reiterated this same request in verbal conversations with Defendant Stoner during the same period. (*Id*. ¶ 103.) At no time, up to and including the date of Plaintiff's termination, did Defendants provide Plaintiff with the requested standing desk.  (*Id*. ¶ 104.)

Plaintiff had medical appointments related to his medical conditions in September and October 2019, and informed Defendant Stoner of the appointments. (*Id*. ¶¶ 106-107.) Despite having knowledge of Plaintiff's limitations and impairments, Defendant Stoner and Tyler continued to increase Plaintiff's workload, adding more difficult tasks. (*Id*. ¶ 110.) Plaintiff's 2019 performance evaluation report was prepared by Defendants Stoner and Tyler and endorsed by Dittmann, Haering, and Sammon. (*Id*. ¶ 114.) In his 2019 Annual Performance Review, Plaintiff received a rating of "Partially Meets Expectations" for overall performance rating. (*Id*. ¶ 111.) Plaintiff received a rating of "Highly Effective" across several performance areas, including job performance and competency assessment. (*Id*. ¶ 112.) The report indicated Plaintiff required frequent reminders, including following through on minor requests, maintaining and supplying information necessary for work orders, and supplying a Tier 2 data for the Wiki ArcGIS which was still incomplete. (*Id*. ¶ 108.) For the 2019 period, Plaintiff earned and received a 1.5% performance raise which was to go in effect April 2020. (*Id*. ¶ 113.) While discussing Plaintiff's annual performance, Defendant Stoner never inquired whether Plaintiff needed a reasonable accommodation. (*Id*. ¶ 109.)

In January 2020, Plaintiff was diagnosed with CAD/CAA (a heart condition) secondary to hyperlipidemia and GERD which required prescribe medications. (*Id*. ¶¶ 116-20.) Plaintiff's 2020 Annual Performance evaluation and review, prepared by Defendant Stoner, was conducted in February 2021. (*Id*. ¶¶ 121, 130, 141.) The evaluation noted that Plaintiff required continuous reminders, forgets tasks and had to be reminded of next steps. (*Id*. ¶ 121.) Plaintiff received ratings of "Effective and Highly Effective across several areas but received an overall performance rating of "Partially Meets Expectations." (*Id*. ¶¶ 127-28.) Following his evaluation, Plaintiff noted in the "Self-Assessment section" of the form that "I would like to develop and hone my technical, analytical, operational, and leadership skillsets that would help me grow inside Central Valley in a possessable future role…" (*Id*. ¶ 138.) Plaintiff asserts that his remarks in the "Self-Assessment section"

constitutes a request for an accommodation. (*Id*. ¶¶ 138-39.) Plaintiff did not receive a performance raise for 2020. (*Id*. ¶ 129.)

Following his 2020 performance review, Defendant Stoner placed Plaintiff on a Performance Improvement Plan ("PIP"). (*Id.* ¶ 141.) Plaintiff had a medical appointment in April 2021 and informed Defendant Stoner. (*Id*. ¶ 148.) In May 2021, Plaintiff spoke to Defendant Sammon regarding his PIP status and informed him that he was assigned too many tasks and inquired if a portion of the responsibilities could be re-assigned to the Project Leader or be given extra time to complete his tasks without penalty. (*Id*. ¶¶ 150-51.)  Defendant Sammon failed to discuss the issue, provided no remedy, and did not suggest an accommodation. (*Id*. ¶ 152.)  In May 2021, Plaintiff applied for a transfer to a vacant "T&D Maintenance Planner position" and notified Defendant Stoner of his interest in the vacant position. (*Id*. ¶¶ 153-54.) Defendant Stoner prepared monthly PIP reviews of Plaintiff for the months of March through June 2021 and noted that Plaintiff completed most tasks for the month, made improvements in starting Tier 2 construction projects, and identified committing and meeting deadlines as an area of improvement. (*Id*. ¶ 157.)  Defendant Stoner rated Plaintiff as "Partially Meets Requirements" on the monthly PIP reviews. (*Id*. ¶ 161.)

In June 2021, Plaintiff spoke to Rob Weizenecker, Stoner's supervisor, and re-iterated his desire to transfer to another department. (*Id*. ¶¶ 163-4.) On July 21, 2021, Plaintiff met with human resource personnel for the vacant position and was scheduled for a call-back interview on August 3, 2021. (*Id*. ¶¶ 167-69.) On August 2, 2021, Plaintiff met with Defendant McGinnis who informed him that he was terminated as a result of his "level of performance and consistency over the past couple of years," and offered Plaintiff one month of severance pay tied to a Separation Agreement and Release. (*Id.* ¶¶ 170-72.)

Plaintiff alleges the vacant T&D Maintenance Planner position was filled by a "non-disabled younger employee" and his old position filled by a "nondisabled" employee. (*Id.* ¶¶ 178-81.)  Plaintiff alleges Defendants reasoning for his termination are pretextual. (*Id.* ¶ 193.)  Plaintiff alleges the actual reason for his termination was because of his disabilities. (*Id.*) Plaintiff further alleges the Defendants were not only aware of his disabilities but failed to provide reasonable accommodations. (*Id.*)

## LEGAL STANDARD

### Rule 12(b)(6) Standard of Review

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." (*Id.* at 679.) While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." (*Id.* at 678.) (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

***Pro Se* Standard of Review**

Where a litigant is *pro se*, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A court may consider "new claims appearing for the first time in the briefing 'if the claims could have been asserted based on the facts alleged in the complaint." *Vlad-Berindan v. MTA New York City Transit*, No. 14-cv-675, 2014 WL 6982929, at *5 (S.D.N.Y.2014) (citing *Rosado v. Herard*, No. 12-cv-8943, 2013 WL 6170631, at *3 (S.D.N.Y. 2013). Courts are to read a *pro se* litigant's papers "liberally" and "interpret them to raise the strongest argument that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994). When a *pro se* plaintiff has been assisted by an attorney they are typically not afforded any special solicitude. *See Knox v. Cnty. of Ulster*, No. 1:11-CV-0112 GTS/CFH, 2013 WL 286282, at *17 (N.D.N.Y. Jan. 24, 2013).

**Title II of ADA & the RA**

The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability… be subjected to discrimination. 42 U.S.C. § 12132; *Shine v. New York City Hous. Auth.*, No. 19-CV-04347 (RA), 2020 WL 5604048, at *2 (S.D.N.Y. 2020). The purpose of the ADA is to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied. 42 U.S.C.A. § 12132; *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590 (S.D.N.Y. 2010).

Section 102(a) of the ADA creates a private right of action for disability-based employment discrimination. 42 U.S.C. § 12112(a). To assert a claim for disability discrimination, plaintiff must allege that: (1) his employer is subject to the ADA; (2) he was a person with a disability under the meaning of the ADA (3) he was otherwise qualified to perform the essential functions of the job, with

or without reasonable accommodation; and (4) he was fired or suffered an adverse employment action because of his disability. *Jordan v. Forfeiture Support Assocs*., 928 F. Supp. 2d 588, 605 (E.D.N.Y. 2013). The ADA and RA[3] "impose identical requirements*." Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).*

When considering a claim under the ADA and RA, the court must construe the term "disability" broadly. 42 U.S.C. § 12102(4)(A); s*ee also Shine*, at 4. The ADA defines the term "disability" with respect to an individual as a physical or mental impairment that substantially limits one or more major life activities of such an individual. 42 U.S.C.A. § 12102. To survive a motion to dismiss, the operative complaint asserting a workplace discrimination claim need not allege specific facts establishing a prima facie case of discrimination but must allege facts sufficient "to raise a right to relief above the speculative level." *See Gonzalez v. Carestream Health, Inc*., 520 F. App'x 8, 9-10 (2d Cir. 2013) (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Generally, "[c]ourts require a plaintiff to do more than simply allude to h[is] impairments in h[is] pleadings; [ ] he must plead how those impairments significantly impacted [his] major life activities or [ ] he will not survive a motion to dismiss." *Collins v. Giving Back Fund*, 2019 WL 3564578, *13 (S.D.N.Y. Aug. 6, 2019).

A plaintiff asserting a claim for failure to provide reasonable accommodations, must demonstrate (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) At the pleading

---

[3] In order to assert a claim pursuant to the RA, a plaintiff must demonstrate: (1) they are "handicapped persons" under the Act; (2) they are "otherwise qualified" for the benefit that has been denied; (3) they are being denied benefits solely by reason of their disabilities; and (4) the entity denying benefits receives federal financial assistance. Rehabilitaion Act of 1973, § 504(a); *see also Lincoln Cercpac v. Health & Hosp. Corp*., 977 F. Supp. 274 (S.D.N.Y. 1997), *aff'd sub nom. Cercpac v. Health & Hosps. Corp*., 147 F.3d 165 (2d Cir. 1998).

stage, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023*)* (citing *Dooley v. Jetblue Airways Corp.*, 636 F. App'x 16, 19–21 (2d Cir. 2015)). Notice of a plaintiff's alleged disability is an assumed prerequisite of an ADA claim for failure to make reasonable accommodations. *Schoengood v. Hofgur* LLC, No. 20-CV-2022 (KAM), 2021 WL 1906501, at *5 (E.D.N.Y. May 12, 2021) (citing *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466 (S.D.N.Y. 2012); *see also McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97 (2d Cir. 2009). More specifically, for a defendant to be liable for discrimination "on the basis of disability," 42 U.S.C. § 12182(a), the defendant must have had adequate knowledge of the plaintiff's disability. *Shaywitz*, 848 F. Supp. 2d at 467. Thus, to plausibly assert a claim, a plaintiff must demonstrate "the defendant knew or reasonably should have known of the plaintiff's ... disability." *Shine*, 2020 WL 5604048, at *7 (*quoting Logan v. Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014).

The ADA contains a non-exhaustive list of "major life activities," which includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (citing *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005).

Defendants have a presumptive obligation to provide "reasonable accommodations" to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii*)* Consequently, a covered entity's failure

to provide such accommodations will be sufficient to satisfy the third element. *See id.*; *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), corrected by, 511 F.3d 238 (2d Cir. 2004). "At the motion to dismiss stage, the [Defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015) *quoting Goonan v. Federal Reserve Bank of New York*, 916 F. Supp.2d 470, 482 (S.D.N.Y.2013). Whether a proposed accommodation is reasonable is fact-specific and must be evaluated on a case-by-case basis. *Schoengood v. Hofgur LLC*, No. 20-CV-2022 (KAM), 2021 WL 1906501, at *3 (E.D.N.Y. May 12, 2021) *citing Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999)

**Law of the Case Doctrine**

The law of the case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages unless cogent and compelling reasons militate otherwise." *Delville v. Firmenich Inc.,* 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). Though it is not binding, the discretionary doctrine counsels against a court revisiting its prior rulings except to correct a clear error, an intervening change in the law, the availability of new evidence, or to prevent manifest injustice. *See In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112 (S.D.N.Y. 2010).

**DISCUSSION**

In his SAC, Plaintiff asserts claims pursuant to the ADA and RA for failure to accommodate and wrongful termination against the same named Defendants in the FAC. In the Court's March 2024 Order, the Court dismissed with prejudice all ADA and RA claims asserted against the Individual

Defendants on the basis that the ADA and RA do not provide for personal liability on the part of non-employer individuals.  *See Mabry v. Neighborhood Defender Service*, 769 F. Supp. 2d 381, 391 (S.D.N.Y. 2011); *see also Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)  It is well settled in this district "that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages of the litigation unless cogent and compelling reasons militate otherwise." *Delville,* 23 F. Supp. 3d at 425 (internal citation omitted). Here, Plaintiff fails to provide a compelling reason why the Court should deviate from that principle. Further, the Court notes that in all prior pleadings, including the FAC, Plaintiff referred to each of the individually named defendant as employees of CHGE. In his SAC, Plaintiff designates each of the individual defendants as both employees of CHGE and as his employer. Under the ADA, an "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" 42 USC § 12111(5)(A). Plaintiff's mere re-designation of a fellow employee and/or supervisor to the title of employer, without any explanation or details, is insufficient to convey employer status upon a named defendant. Accordingly, consistent with the Court's March 2024 Opinion, and upon the principle of the law of the case, the ADA and RA claims asserted against the Individual Defendants are deemed dismissed with prejudice.[4]

As previously stated, to avoid a Rule 12(b)(6) dismissal, Plaintiff must assert sufficient facts to support each of the essential elements of his disability discrimination claims, namely:  (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation[5], plaintiff could perform the essential

---

[4] Courts often address ADA and RA "claims in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).
[5] Although neither the ADA nor RA provide a definitive meaning to the term "reasonable accommodation," the ADA provides a list of different methods of accommodation which may encompassed by the term, including : 1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities;  and 2) job

functions of the job at issue; and (4) the employer has refused to make such accommodations. *McMillan,* 711 F.3d at 125–26. Upon a review of the pleadings, Plaintiff's allegations fall short of the requisite standard.  In his SAC, Plaintiff asserts that he suffers from a number of physical ailments and disabilities. Plaintiff, however, fails to allege how those disabilities or impairments substantially limits one or more of his major life activities. 42 U.S.C.A. § 12102.

Though Plaintiff indicates that he has difficulty sleeping and suffers from a host of physical impairments, he fails to quantify how such disabilities affect his daily activities. A plaintiff asserting a disability discrimination claim must do more than simply allude to his or her impairments in cursory fashion. *DeFranco v. New York Power Auth.,* 731 F. Supp. 3d 479, 492–93 (W.D.N.Y. 2024) (internal citations omitted). To plead a plausible claim, even when it may be obvious how the impairment affects a major life activity, the pleadings must allege that those activities have been substantially impaired and to what extent. (*Id.*)  Accordingly, Plaintiff's pleading deficiencies warrants dismissal of the claim.

It is axiomatic that before an employer can provide an accommodation, the employer must have notice of the disability. *See Castillo v. Hudson Theatre, LLC,* 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019). Therefore, a plaintiff must allege that the defendant(s) had notice of the disability "before ADA liability may be triggered for failure to provide accommodations." (*Id.* at 451.) (*quoting Thompson v. City of New York, No*. 98 Civ. 4725, 2002 WL 31760219, at *7 (S.D.N.Y. Dec. 9, 2002)). Plaintiff alleges that Defendants' frequent comments concerning his work performance evaluations such as his forgetfulness, the inability to meet deadlines, his multiple requests to take leave for the purpose of attending medical appointments, and the results of his pre-employment physical exam are

---

restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. *See* 42 U.S.C. § 12111(9); *Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1515 (2d Cir. 1995).

sufficient to demonstrate implicit knowledge of his disability. (SAC ¶¶ 147, 149.) However, the issue is not whether the employer had knowledge of a disability but rather whether there was notice of a particular disability for which the employee is entitled to protection under the ADA. Plaintiff's allegations are insufficient to make such an inference.

Plaintiff claims Defendants had notice of his disabilities upon receiving his pre-employment physical. (SAC at ¶¶ 53, 55.) Such contention is insufficient. Plaintiff alleges that his pre-employment exam indicated he had a hip replacement, suffered from prehypertension, and was overweight ("obese"). (*Id.* at ¶ 53.) Plaintiff does not allege that the pre-employment exam conveyed any indication of an inability to perform his work responsibilities or the existence of any limitation. Most tellingly, Plaintiff began working for Defendants as a Telecommunications System Designer in January 2016, as a contractor employed through Ethan Allen Workforce Solutions. (*Id.* ¶ 51.) In or about June 2016, Plaintiff commenced working directly for the Defendants and underwent a pre-employment physical examination. (*Id.* ¶ 53.)  In his 2016 calendar year performance evaluation, Plaintiff received ratings of "Effective" and "Highly Effective" for several areas of performance, including "Job Requirements" and "Expectations and Overall Performance." (*Id.* ¶ 63.)  The performance evaluation does not provide any indication of Plaintiff's inability to perform his work functions. Following his positive evaluation, Plaintiff is given additional responsibilities.  In 2017, Plaintiff received an overall evaluation which reflects a decline in his overall performance. However, such a decline in work performance does not equate to providing notice to your employer of a disability under the ADA. *See Fuoco v. Lehigh Univ.*, 981 F. Supp. 2d 352, 369–70 (E.D. Pa. 2013) (finding that even if the plaintiff informed their employer of the reason for medical appointments, along with the plaintiff having made observable mistakes at work, it is not enough to conclude that the defendant knew or should have known of a relevant disability.)

"[T]o trigger an ADA obligation to the employee, an employer must have notice of a disability." *Santiago v. New York City Police Dep't*, No. 05CIV3035(PAC)(MHD), 2007 WL 4382752, at *21 (S.D.N.Y. Dec. 14, 2007), *aff'd*, 329 F. App'x 328 (2d Cir. 2009) (aberrant behavior accompanying major stressors were insufficient to put defendant employer on notice that plaintiff was suffering from depression, warranting dismissal of ADA claims). The requisite notice was deemed adequately pled where the plaintiff alleged that her physician provided medical documentation to the employer requesting that she be assigned only light-duty work and be excused from carrying certain objects or performing heavy lifting. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015).

Plaintiff further contends Defendants had notice of disabilities by way of Plaintiff informing Defendants of his medical appointments and the reason for such appointments. These medical appointments were purportedly for his OSA, heart, hip, tendinitis, and bursitis. Prior to each appointment, Plaintiff had a conversation with Defendant Stoner, requesting time off and explaining the reason for each appointment. (SAC ¶¶ 89, 105-07.) The Court cannot reasonably conclude that such interactions provided adequate notice of a disability. Informing an employer that you need time-off to attend a medical appointment and that you may or will be receiving unspecified medical treatment, without more, does not provide the request notice of a disability. The allegations must be sufficient to provide notice that the medical condition qualifies as a disability under the ADA. *See Longway v. Myers Indus.,* Inc., 812 F. App'x 57, 59 (2d Cir. 2020) (Plaintiff's mere communication to his employer that he received medical treatment, where the record does not characterize his condition as anything other than a one-time injury, does not qualify as a disability under the ADA and RA).

Plaintiff's allegations also fail because he did not request a reasonable accommodation. Reasonable accommodation requests may take many forms, but it must clearly be communicated in such a way that Defendant is on notice of the disability at issue. Neither the ADA nor RA provide a definitive meaning to the term "reasonable accommodation." The ADA, however, provides a list of different methods of accommodation that may be encompassed within the term, including: 1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and 2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. *See* 42 U.S.C. § 12111(9); *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995). Under certain circumstances, an unpaid leave of absence has been deemed a reasonable accommodation under the ADA. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006) (internal citations omitted). Significantly, what constitutes a reasonable accommodation under the ADA "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir. 2013) (quoting *McGary v. City of Portland,* 386 F.3d 1259, 1270 (9th Cir. 2004)).

Generally, an employee bears the burden of requesting an accommodation, and only after such a request has been made, is an employer required to engage in an interactive process of finding a suitable accommodation. *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 656–57 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003) (citing *Stola v. Joint Indus. Bd.*, 889 F. Supp. 133, 135 (S.D.N.Y.1995). Stated differently, under the ADA, an employee's request for a reasonable accommodation triggers a duty on the part of the employer to investigate that request and determine its feasibility. *See* American with Disabilities Act of 1990 § 2, 42 U.S.C.A. § 12101 et seq.; *see also*

*Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44 (E.D.N.Y. 2021). Notably, a reasonable accommodation does not mean the elimination of any the employee's essential job functions. *See Lanci v. Andersen*, No. 96 CIV. 4009 (WK), 2000 WL 329226, at *9 (S.D.N.Y. Mar. 29, 2000) (citing *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir.1991). The accommodation must be such that the employee is able to perform his "essential job functions." (*Id*.)

Plaintiff alleges that the Defendants had notice of his disability and requested an accommodation in 2019 when he asked for a standing desk when his office was undergoing remodeling. (SAC ¶ 101.) As alleged in the SAC, Plaintiff's contention is unavailing. It should be noted that it was Defendant Tyler who reached out to Plaintiff and his work colleagues, *via* an email message, to inquire if anyone was interested in a "standing desk" while new office furniture was being purchased.  (*Id*.) Though Plaintiff alleges in the SAC that the desk would be of assistance in dealing with his sleeping disorder, it does not allege that Plaintiff made the request to his employer in an attempt to address a disability after providing notice of said disability. *Compare Sanzo v. Uniondale Union Free Sch. Dist*., 225 F. Supp. 2d 266, 269 (E.D.N.Y. 2002) (Notice of disability was found where the Defendant employer made direct contact with the employee's medical provider and was informed that the Plaintiff's work deficiencies were due to a sleeping problem caused by a medical condition. Significantly, the doctor informed that despite the condition, Plaintiff was still capable of performing his job).

Plaintiff further asserts that he provided notice of a disability and requested an accommodation through a written communication on his 2020 Annual Review, contained in the Self-Assessment section. (SAC ¶ 138.)  There, Plaintiff indicated "I would also like to develop and hone my technical, analytical, operational, and leadership skill sets that would help me grow inside Central Hudson in a possible future role in Emergency Response, Electric T&D Operations, Work and Asset Management New Business Services, or even Internal Audit" (emphasis omitted). (*Id*.) Plaintiff claims that the

"plain English" straightforward request asking for and desire for continued employment with Defendant CHGE is a sufficient request for an accommodation. (*Id.* ¶ 139.) An employee's mere communication to his employer of a desire to remain employed, to continue to develop his technical skills, and advance within the company does not equate with a request for an accommodation. According, Plaintiff's contention is unavailing.

Following his 2020 performance evaluation, Plaintiff was placed on a PIP. (*Id.* ¶ 141.) In May 2021, while on still on PIP, Plaintiff informed Defendant Sammon that he was assigned too many tasks and inquired if a portion of his work responsibilities could be re-assigned to a Project Leader or be given additional time to complete his assignments without penalty. (*Id.* ¶ 151.) Such a request may fall within the meaning of a reasonable accommodation. The Court notes: however, it is also an indication of the Plaintiff's inability to perform his essential job functions.

Lastly, in June of 2021, while still on PIP, Plaintiff informed CHGE management of his desire to transfer to another department. (*Id.* ¶ 166.) Plaintiff met with human resources personnel on July 21, 2021, and was scheduled for a call-back appointment on August 3, 2021. (*Id.* ¶ 169.) On August 2, 2021, Plaintiff was terminated. (*Id.* ¶ 172.) Under the ADA, a reasonable accommodation may include the reassignment of the employee to a vacant position. *See Morse v. JetBlue Airways Corp.*, 941 F. Supp. 2d 274, 299 (E.D.N.Y. 2013) (internal citations). However, because the Court has determined that Plaintiff has failed to provide adequate notice of a disability as required pursuant to the ADA, the Court must determine that Plaintiff's SAC, as currently written, does not give rise to a plausible ADA and RA claims. Consequently, the Court, dismisses Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action, without prejudice.

**IV. State Law Claims**

In his SAC, Plaintiff asserts approximately nine state law claims sounding in, *inter alia*, violations of the New York State Human Rights Law, aiding and abetting, civil conspiracy, quantum meruit, and prima facie tort. Because Plaintiff's Section ADA and RA claims must be dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c) (a district court may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction"). Therefore, the Court dismisses, without prejudice to recommence in the proper forum, Plaintiff's Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth Causes of Action.

## CONCLUSION

Congress enacted the ADA because "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *Capobianco v. City of New York*, 422 F.3d 47, 61 (2d Cir. 2005) (quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). None of these myths nor fears can have any bearing on termination without adequate notice of the disability's existence. Here it has been found that no such notice was present. The allegations of discrimination do not rise above "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In light of Plaintiff's failure to assert a plausible claim pursuant to the ADA and the RA, Defendants' motion to dismiss Plaintiff's causes of action one through nine of the Second Amended Complaint is GRANTED.

Consistent with the Court's March 2024 Opinion, and upon the principle of the law of the case, Plaintiff's federal claims asserted pursuant to the ADA and RA against the Individual Defendants are deemed DISMISSED with prejudice. Plaintiff's state law claims sounding in, *inter*

*alia*, violations of the New York State Human Rights Law, aiding and abetting, civil conspiracy, quantum meruit, and prima facie tort are deemed DISMISSED without prejudice.

Plaintiff is granted leave to file a Third Amended Complaint by November 14, 2025, consistent with this order. Plaintiff is advised that the Third Amended Complaint will replace, and not supplement, all previous complaints, and so any claims that he wishes to pursue must be included in, or attached to, the Third Amended Complaint. Should Plaintiff file a Third Amended Complaint, Defendants are directed to answer or otherwise respond by December 8, 2025. If Plaintiff fails to file a Third Amended Complaint within the time allowed, those federal claims that were dismissed without prejudice will be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 35, to mail a copy of this Order to the *pro se* Plaintiff at the address listed on ECF and to show service on the docket. The Court further directs the Clerk of Court to terminate Individual Defendants McGinnis, Sammon, Tyler, Stoner, Haering, Dittmann, and John-and/or-Jane Does 1-10.

Dated:  September 30, 2025
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge